The Chancellor.
The facts of this case will be found in 4 Halst. Ch. R. 322, Potts v. Armour, reported by mistake as Potts v. Amono. That bill was filed for a different purpose from that of the present one. The decision, however, involved the same equities as exist here. That bill was dismissed, for want of prosecution, upon the failure of the complainant to amend his bill, the Chancellor having decided that to be necessary, although this does not appear in the case as reported.
. The object of the present bill is to relieve the complainant from the embarrassment of having erected a valuable dwelling house, by mistake, on the land of the defendant, Armour. The prayer of the bill is, that the deed' from Redmond to Armour may be so reformed as to exclude the lot upon which the complainant has erected his buildings, and so as to embrace a lot of the same dimensions adjacent thereto, which, it is alleged, was intended, by both grantor and grantée, as the lot to be conveyed, or that Armour may be decreed to take the improvements upon ¡equitable terms.
. If the mistake was in the deed from Redmond to Armour, the court has power to correct the mistake; and parol evidence is admissible for the purpose of showing the mistake. It forms one of the exceptions to the general rule, which excludes parol evidence offered to vary á written contract.
i It will- be perceived, by the Chancellor’s opinion in 4 H. C. R. 323, that he considered the evidence before him as satisfactorily establishing the mistake to be in the deed from- Redmond to Armour. If I could reach the same conclusion from the evidence, I should have no hesita-' tion in adjusting the equities of the parties according to the .principles laid down by him in that case. Redmond’s *117 testimony does prove the mistake to have keen there beyond a doubt. But Redmond is not a competent witness. Both the complainant and Armour hold under Redmond’s warranty. Redmond first conveyed the lot to Armour, and warranted the title. Afterwards, with like warranty, Redmond conveyed to Cook, through whom the complainant derived his title. If, by this suit, the first deed is so reformed as to convey a different lot of land, it relieves Redmond from the consequences of having warranted to Cook title to the same lands, which before he had conveyed to Armour. If the complainant succeeds in this suit, it relieves Redmond from his warranty; if the complainant fails, then Redmond must respond to Cook, or to the complainant, who holds under him, for a breach of warranty. His interest is not balanced. He will he directly benefited by the complainant’s success in this suit. Setting aside the testimony of Redmond, I cannot say that the evidence is sufficient to establish the mistake to have been in the deed to Armour. Armour denies it in his answer. He declares that he purchased the very lots which Redmond conveyed to him, and^that there was no mistake. There is no positive evidence to conflict with this statement in Armour’s answer. The complainant relies upon circumstances, hut they are susceptible of an interpretation quite as consistent with another hypothesis. But it is proved, beyond all doubt, that the complainant erected his improvements on this lot by mistake: he supposed that it was the lot next that belonged to Armour. Armour labored under the same mistake. lie lived in the vicinity; he saw the complainant progressing, from day to day, with these improvements. If he knew this to he his lot, his silence was a fraud upon the complainant; hut this is not pretended. Ho admits that he did not suspect the erections to he upon his lot, until some time after their erection, when by actual measurement, to his surprise, he discovered the mistake. Under such circumstances, it would he most unjust to permit Armour to *118 take these improvements, and to send the complainant away remediless.
It is very true, as was urged upon the argument, the complainant is the most to blame in this matter. A diligent examination of the deed to Armour, and an actual measurement'of the land, would have decided the difficulty. But it was a vacant lot of land, plotted out upon a map only, and the mistake was one which might occur to the most careful and diligent man. The fact of Armour’s standing by, and participating in the mistake, is an important feature in the case.
In adjusting the equities of the parties, a decree should be made, which, while it relieves the complainant, must put Armour to as little inconvenience as possible.
I have concluded, therefore, to offer Armour the privilege of taking the improvements at a value to be ascertained upon equitable principles by a master; or, if he prefers it, to order a reference to a master to ascertain the value of the lot, and to decree a release to the complainant upon his paying the valuation. Twenty days will be allowed Armour to make his selection of these offers, if he desires it. Should he decline selecting either of them within the time limited, I shall order a decree to the following effect: that Redmond convey to Armour lot No. 82 free and clear of all encumbrances, and that Armour release to complainant lot No. 84. As between the complainant and Armour, this will be just and equitable, for it appears, by the evidence, that lot 32 is more valuable than lot 34. As to Redmond, he admits this to be correct, and agreeable to his original intention, and tenders himself ready to do this.
As to Mrs. Harrison’s mortgage, I cannot put her to any hazard, ' I will decree her mortgage to be a lien on lots 32 and 33, but lot 34 must stand to make good any deficiency.