THOMAS J. MULLEN

v.

CORNELIUS J. CRONAN et al., executors of John Mullins, deceased.

[Decided July 21st, 1919.]

1. Mistakes which might have been avoided by common and ordinary care, and which result from negligence, will not be reformed in equity.

2. There is no authority for the doctrine that a unilateral mistake is ground for reformation in the absence of fraud.

3. One who seeks reformation of a written instrument has the burden of proof.

4. Equity will not decree a reformation when the result will be inequitable.

On bill, &c.

*Messrs. Edwards & Smith,* for the complainant.

*Messrs. Vredenburgh, Wall & Carey,* for the defendants.

LEWIS, V. C.

The real proposition presented by this issue is that this court should reform an assignment, absolute on its face, made by the complainant to John Mullins, his father-in-law, of his interest in two hundred shares of Colonial Land Company stock. If the proofs, as presented, do not justify the court in doing this, the executor should not be restrained from pleading at law this assignment, and the bill filed by him should be dismissed. A further review of the evidence in this case does not change the opinion entertained by me at the conclusion of the oral proceedings that this course should be pursued.

The shares in the land company just mentioned formerly belonged to the complainant, but on May 16th, 1912, he assigned them to John Mullins, his father-in-law. A copy of this assign-

ment, which is under seal, is in evidence (*Exhibit C-8*). A perusal of it cannot fail to satisfy anyone that it was prepared with consideration and care. It would appear to set at rest any claim or contention of the complainant that after executing it he retained any right in the proceeds of the stock. I call attention to this significant paragraph in the instrument:

"And the undersigned hereby authorizes and empowers said John Mullins to retain and keep for his own use and benefit any and all moneys which may be collected upon checks, drafts and orders heretofore or hereafter issued by the Colonial Land Company to the order of the undersigned."

Similar assignments and agreements were made by Mrs. Thomas J. Mullen, wife of the complainant, for her one hundred and fifty shares in the land company; and also by John Henry Mullins, a son of John Mullins, covering his holding of one hundred shares in the company. There is nothing in the evidence, as I recall it, which shows that any of these parties paid John Mullins, who, with Dennis McLaughlin, controlled this company, for this stock, and it is admitted that none of them have received any of the proceeds after the assignment to Mullins.

The complainant's evidence is that he signed the assignment at the request of his wife without reading it, and that the next time he saw it it was in the possession of Cornelius J. Cronan, the executor of John Mullins, and that he made a demand upon Mr. Cronan for the money. His testimony is flatly contradicted by Mr. Cronan, who appears to be a disinterested witness, and who says that the first claim ever made by Mullen or anyone in his behalf was on January 6th, 1914, after the death of his father-in-law. Mrs. Mullen's story of the assignment is that she got it from Mr. Cronan and asked her husband to sign it, telling him where it came from and what the paper was for. After her husband had signed it she says she took it back to Mr. Cronan. There does not appear from this evidence to have been a mistake, mutual or otherwise, and the testimony of Mullen, who seeks the reformation, is simply to the effect that he signed the paper because his wife told him to. This evidence is inconclusive and

somewhat feeble to effect a reformation, and, moreover, the mistakes which equity will reform are common and ordinary ones and which are not the result of negligence.

The evidence offered by the defendants is more convincing. It is shown by it that John Mullins, the father-in-law of Thomas J. Mullen, was a very successful business man, possessed of considerable wealth. Among his other possessions he had a furniture business at 218 Market street, Newark, New Jersey. On January 5th, 1912, during his lifetime, he leased the premises to the complainant and his wife for twenty-one years, from January 1st, 1912, at a yearly rental of $6,000. This rental was nominal. It was asserted that it would have been, to a stranger, in the neighborhood of $25,000 a year. Testimony was offered which prove that the charges, taxes, insurance, &c., on this property amounted to about $5,000 a year. On the same day Mr. Mullins also assigned to the complainant and complainant's wife all the accounts, debts, &c., arising out of the business carried on by him in Newark. A bill of sale of the good-will, entire stock of trade and business was also on the same day given to Mullen. Mullen said on direct examination that he paid $20,-000 to his father-in-law for this bill of sale, but on cross-examination he admitted that he merely handed him a check for this amount and that his father-in-law endorsed it and handed it back to him and it was deposited in his bank account. In other words, he paid nothing.

On January 29th, 1912, the Newark store was destroyed by fire. The evidence is that after the fire Mullen and his wife asked John Mullins that instead of replacing the destroyed building at Newark of like character to use the money derived from the sale of the shares in the Colonial Land Company belonging to them in the erection of a larger and more modern building. It would appear that Mullins agreed to this proposition. Mullins had intended to expend about $50,000 in replacing the building, but it cost finally $117,634.03. On April 8th, 1913, Mullins died. The will of Mullins, bearing date December 30th, 1911, provided that the fee of the land to this Newark property should pass to his daughter, the wife of the complainant. The Newark building was not completed at the

time of Mullins' death, but was by the executors. The evidence does not satisfy me that during the period of the reconstruction of this building that the complainant ever made any claim for the proceeds of the sale of the Colonial Land Company's stock. Cronan, the executor, says in his testimony that no mention was ever made to him by complainant of his claim for the cash proceeds of the stock until the last bill had been paid on the building. The evidence shows that the money derived from the sale of complainant's stock was used in the erection of the new building, and that in its construction he had full control and his wishes were carried out by the architect and those employed on the building.

In view of these facts and circumstances, which I am constrained to view as correct, I think reformation of the instrument should be denied. It is well settled that equity will not decree a reformation when the result would be inequitable, and aside from this the testimony offered by the complainant, and the burden of proof is with him (*Flaacke* v. *Jersey City, 28 N. J. Eq. 110; affirmed, 30 N. J. Eq. 733*), does not disclose any mutual mistake, and there is no authority for the doctrine that a unilateral mistake is ground for reformation in the absence of fraud. *Green* v. *Stone, 54 N. J. Eq. 387; Herron* v. *Mullen, 56 N. J. Eq. 839; Doniol* v. *Commercial Fire Insurance Co., 34 N. J. Eq. 30,* and other cases.

It was urged by the defendants that the bill also might be dismissed on the ground of laches and estoppel. It is not necessary for me to consider this in light of the views I have just expressed, but in passing it might be said that it would seem highly inequitable for this court to grant the relief prayed for so long after the death of the testator, when his lips are sealed as to the transaction between himself, his son-in-law and his daughter, and while it is apparent that the money derived from the stock assigned was expended in the building, disbursed and applied according to complainant's wishes and desires, and that this identical property is devised under the will of John Mullins to his daughter, the wife of complainant.

A decree may be entered dismissing the bill in accordance with these views.