MAGNOLIA CONSTRUCTION COMPANY, complainant,

v.

EDWARD MCQUILLAN, defendant.

[Argued March 13th, 1923.    Decided June 18th, 1923.]

Complainant and defendant owned adjoining lots of land, the division line being indicated by a fence. Complainant desiring to erect a building on its lot caused it to be surveyed, the result of which fixed the division line at a point about one foot on defendant's enclosure and beyond the fence, who, when his attention was called to the line established by the survey, removed the fence and a small shed, claimed by complainant to encroach on its lot. The defendant made no protest against the line thus established by the survey, but participated in locating it to the extent of holding one end of a measuring line from one monument to another along the proposed line. On the line thus indicated the complainant built one side of a large apartment house, the defendant having knowledge of the erection of the wall on the line thus established. Subsequently defendant procured another survey which disclosed that the first was incorrect and that complainant's wall encroached on defendant's land about one foot in front and a less distance in the rear. Defendant brought a suit in ejectment and complainant filed his bill of complaint to restrain the suit and praying that the outside face of the wall of the building be fixed as the line between the two lots. *Held*, that complainant was entitled to the relief prayed for on making equitable compensation to defendant for value of the land encroached on by complainant.

Mr. *Isaac Gross* and Mr. *Merritt Lane,* for the appellant.

Messrs. *Collins & Corbin,* for the respondent.

The opinion of the court was delivered by

BERGEN, J.

The complainant and defendant owned adjoining lots which were vacant, except that defendant had a small shed on his, and a fence on the supposed line between the two lots.

The complainant, desiring to build a large apartment house on its land caused it to be surveyed, which disclosed that the line ran about a foot east of the fence, and that defendant had encroached with his fence and shed to that extent on complainant's lot. When defendant's attention was called to the circumstance, he made no protest but removed the shed and fence, and participated in ascertaining the line according to the survey to the extent of holding a measuring tape along the line between the front and rear monuments established by the survey.

The complainant built its wall along the line thus established.

After the building was completed defendant caused another survey to be made by another surveyor, admitted to be more accurate than the first, which disclosed that complainant's easterly wall encroaches on defendant's lot to the extent of about one foot in front and a less distance in the rear. Negotiations seem to have been had between the parties looking to the adjustment of the difficulty which failed, and defendant brought a suit in ejectment to recover possession of the land on which complainant had thus encroached, which, if successful, will require complainant to take down, substantially, the east wall of the building, which is four stories high. The complainant filed this bill to restrain the prosecution of the ejectment suit, and the establishing of the wall at the boundary line. The vice-chancellor, who heard the cause, advised a decree dismissing the bill, and complainants have appealed.

The vice-chancellor held that the doctrine of mutual mistake did not apply because the complainant's surveyor made the mistake on which defendant relied, and that he was not bound to have his land surveyed when complainant's surveyor assured him that the dividing line was established by him. But this is not a fair inference from the facts. There is no doubt but that where complainant built its wall on defendant's land it did so under a mistake as to the true line; and it was a mistake which the defendant entertained when he moved his fence. It does not make any difference how the mistake arose, in the absence of fraud, and it is not pretended that

47

complainant was guilty of any fraud, the only question is was there a mutual mistake as to the partition line. The defendant was told that complainant intended to build on the proposed line, and that the land belonged to complainant, and although he had it enclosed with his fence that it was not the correct line. In this he was mistaken. In other words, there was a mutual mistake as to ownership of the now disputed strip of land, and that mistake continued until after the building was erected, manifested by defendant in that he made no objection while it was in course of erection, and he knew that it was being built on land formerly within his fence enclosure. It is a clear case of mutual mistake and governed by the rule laid down by Chancellor Williamson in *McKelway* v. *Armour, 10 N. J. Eq. 115,* in which the chancellor said: "But it is proved, beyond all doubt, that the complainant erected his improvements on this lot by mistake; he supposed it was the next lot that belonged to Armour. Armour labored under the same mistake. He lived in the vicinity; he saw the complainant progressing, from day to day, with these improvements.

"If he knew this to be his lot, his silence was a fraud upon the complainant; but this is not pretended."

This case cannot well be distinguished from the instant case. The complainant was clearly mistaken as to the line, and defendant either knew or did not know where the line was, and if he knew then he was guilty of a fraud; and if he did not know, but supposed it was where complainant said it was, then he was mistaken, and his subsequent conduct in moving his fence and shed, and helping measure the proposed line, shows that he was mistaken, and as Chancellor Williamson said in the *McKelway Case,* it would be unjust to permit defendant to take the wall, and send the complainant away remediless.

A similar result was reached in *Anglescy* v. *Colgan, 44 N. J. Eq. 203,* in which Chief-Justice Beasley, speaking for this court, referred to *McKelway* v. *Armour, supra,* with approval, as did Mr. Justice Reed, in *Megie* v. *Bennett, 51 N. J. Eq. 281.*

In the *McKelway Case,* where complainant built his house on Armour's lot by mistake, Chancellor Williamson decreed that defendant have the option to retain the lot and improvements on condition that he paid complainant their value, or to release the land to complainant upon payment by him of the value of the land and if defendant declined both options then complainant's grantor, who was a party, should convey to defendant another designated lot of equal value and that defendant release to complainant the lot on which the house had been erected. In the *Anglescy Case* the complainant, by mistake, had so built his house that it encroached on defendant's lot two feet and eight inches, and defendant brought ejectment for the encroachment, which suit complainant sought to restrain by injunction, and that being refused by the court of equity, complainant appealed to this court, where the decree below was reversed and injunction allowed. Chief-Justice Beasley, speaking for the court, saying: "If this were the final hearing, in my judgment, the appellant would be entitled to retain the land upon the equitable condition that he should be charged with its full value in the market."

Equity, under the facts in this case, requires that defendant should be restrained from prosecuting his ejectment suit and decreed to release to complainant the land in dispute on payment to him by complainant its market value, to be ascertained by the court of chancery.

The decree appealed from will be reversed and cause remanded to the court of chancery for further proceedings not inconsistent with this opinion. The decree is reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK—11.