DANIEL J. FRIEL et ux., complainants,

*v.*

IDA TURK and husband, and HELEN POTOKER and husband, defendants.

[Submitted January 7th, 1924. Decided January 31st, 1924.]

1. Where one erects a building by mistake on the lands of another, who knows nothing about it, and, of course, cannot acquiesce, he has no relief on the ground of mistake only.

2. Equity will not grant a man the relief now sought whose condition is attributable solely to his failure to exercise that diligence which may be fully expected from a reasonable person, nor if the negligence was that of the parties' counsel.

On bill, &c.

*Messrs. John S. Applegate & Son,* for the complainants.

*Mr. William Greenfield,* for the defendants Turk.

*Mr. Benjamin M. Weinberg,* for the defendants Potoker.

FOSTER, V. C.

Complainants seek relief, by a decree for specific performance, or for an equitable lien, because of the situation arising out of the following circumstances:

For some years prior to 1921 complainants had been the owners of lots Nos. 85 and 86, on a map of New Point Comfort Beach, at Keansburg, in Monmouth county, on which they had built a house, which they conducted as a boarding-house. Under an order from the state tenement-house commission they were required in 1921 to discontinue the use of the kitchen in their boarding-house and to locate it elsewhere.

To comply with this order they undertook to purchase from the defendant Mrs. Turk the lot adjoining their property and which is known as lot No. 84 on the map mentioned, and by agreement dated May 3, 1921, Mrs. Turk and her husband agreed to convey to complainants lot No. 84 for $1,100. After the execution of this agreement and with the consent of the Turks complainants entered into possession of lot No. 84, and by the time the deed from the Turks to them had been delivered, about July 11th, 1921, complainants had erected buildings and other improvements on this lot at a cost of about $4,800.

Some time in 1922, in connection with an application for a loan to be secured by a mortgage on lot No. 84 and the

buildings and improvements thereon, complainants had a search made against this property and they then learned that the Turks had conveyed to them lot No. 83 instead of No. 84, and that lot No. 84 was not and had never been owned by Mrs. Turk; but was and for years had been the property of the defendant Helen Potoker.

Neither the Turks nor the Potokers live in Keansburg. The Potokers have owned lot No. 84 for many years and have seen it but a few times, and they did not know that complainants had built upon their lot until February, 1923, about twenty months after the date of this transaction.

The Turks, like complainants, apparently did not know and did not take the trouble to find out if the lot they were selling complainants was No. 83 or No. 84, and the attorneys (not complainants' present solicitors) who drew the contract and the deed, acting for both buyer and seller, were equally careless and negligent. The deed appears to have been drawn before the contract, but was not executed and delivered until about two months later. It bears evidence on its face of some change or erasure in the lot number and in the description, which no one explains.

Counsel for complainants concedes that an unconditional decree for specific performance cannot be granted against the Turks because they do not own lot No. 84; but it is suggested they may be decreed to acquire lot No. 84 from the Potokers by the conveyance to the latter of lot No. 83, or on other satisfactory terms, or in the alternative that they be required to compensate complainants for the loss they have sustained through the Turks' failure to convey lot No. 84 as agreed; and complainants further ask that a decree may be made to compel the Potokers to convey lot No. 84 to complainants or to the Turks, so that the latter may specifically perform their contract.

This latter request is based upon the contention that such a decree would not be prejudicial to the rights of the Potokers and would save complainants from great loss and hardship.

The case of *McKelway* v. *Armour, 10 N. J. Eq. 115,* is cited as authority for the relief which complainants now

seek; in that case a lien was enforced in favor of one who had innocently built a valuable house upon the lands of another because the lot owner had participated in the mistake by standing by and seeing the improvements made upon his property without objection, and while it appeared that he did not realize that it was. his property that was being improved, it was held that he had at least equal opportunity with complainant to know the boundary lines of his lot.

In the *McKelway Case* there were present. several important features that are absent from the instant one. In that case Armour had stood by and had seen the improvements being made upon his property. In the present case the proofs do not show that the Turks knew of the improvements complainants were making on lot No. 84, and admittedly the Potokers, owners of the property being built on, had no knowledge of the matter for nearly two years after the improvements were completed.

In the *McKelway Case* the owner of the property, Armour, saw his property being improved. In the instant case neither Potoker, the owner, nor Turk, the pretended owner, ever saw or knew of the improvements until after they were completed.

Assuming, for the purpose of bringing this situation within the *McKelway Case,* that the Turks saw the improvements being made; still they never were, and they are not now, the owners of the property so improved, and there is no power in the court to compel the Potokers to sell their lot, or to enforce a lien against Potoker's property, to compensate complainants for the loss sustained through complainants' own mistake, and which I have merely assumed, for the purposes of the argument, was participated in by the Turks.

The *McKelway Case* has been reviewed in *Haggerty* v. *McCanna, 25 N. J. Eq. 48; Dillett* v. *Kemble, 25 N. J. Eq. 66; Camden, &c., Land Co.* v. *Mason, 91 N. J. Eq. 25,* and *Magnolia Contruction Co.* v. *McQuillan, 94 N. J. Eq. 342;* and from the consideration thus given it, the conclusion is that the relief granted in the *McKelway Case* rested on the rule of mutual mistake.

The mutuality of the mistake in that case arises from Armour's knowledge of the improvements being made upon his property, and of the equal opportunity he had with complainant to ascertain that this was the fact.

It is true, as counsel claims, that this is a case of a mistake producing great hardship to complainants; but it is equally true that this situation is the direct result of complainant's own inexcusable negligence; and the evidence discloses that it is not such a mistake from the consequence of which equity can grant relief. The authorities are in accord in holding that, "If one erects a building by mistake, on the land of another, who knows nothing about it and, of course, cannot acquiesce, he has no relief on the ground of mistake only." Chancellor Zabriskie in *Dillett* v. *Kemble, 25 N. J. Eq. 66.*

In the instant case the situation is produced solely by the culpable negligence of complainants and the attorneys who then represented them in the transaction, in failing to make any effort to learn the name of the owner of the property they attempted to purchase and which they improved, as well as in failing to learn the number of the lot they intended to buy or the location of the lot which was conveyed to them by the Turks. All of this information was readily available to them in the Keansburg office of the land company from whom the lot was originally purchased; in the office of the borough tax assessor and in the records in the county clerk's office, where the deeds for both lots in question had been recorded for some years.

Equity will not grant a man the relief now sought whose condition is attributable solely to his failure to exercise that diligence which may be fully expected from a reasonable person. And this rule has been applied where the negligence was that of the parties' counsel. *Dillett* v. *Kemble, supra; Haggerty* v. *McCanna, supra.*

And it follows therefore that the relief specifically asked for by complainants must be denied. There is, however, one ground on which the court can afford complainants some

relief against the defendant Mrs. Turk for her failure to perform her contract to convey to complainant lot No. 84, and that is to direct that the purchase price of $1,100, paid by complainants to her at the time she conveyed lot No. 83 to them, be refunded to complainants, with interest from the date of the conveyance, on the reconveyance by complainants to her of lot No. 83, if complainants elect so to do. Under the facts in the case, complainants would be entitled to this relief at law and should therefore have it granted to them here.

The authority of the court to grant this relief rests upon the principle adopted in courts of equity, that where the matter is before the court properly for relief, which can only be had in equity, the court, in denying specific performance or other relief asked for, will grant instead such relief arising out of the facts of the case to which the party is entitled, although this relief could be had at law. But in such case the court will only grant such relief as the complainant is entitled to at law. *Bullock* v. *Adams' Executors, 20 N. J. Eq. 367.*

A decree will be advised accordingly and its terms can be settled on notice.