9 N.J. Super. 372 (1950)
74 A.2d 424
EDGAR L. RIGGLE AND BLANCHE E. RIGGLE, HIS WIFE, PLAINTIFFS,
v.
JOSEPH W. SKILL, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 30, 1950.
*374 Mr. Nathan C. Staller for plaintiffs.
Mr. T. Millet Hand for intervenor, Township of Lower.
Mr. Herbert F. Campbell for defendant.
HANEMAN, J.S.C.
The original plaintiffs herein, Edgar L. Riggle and Blanche E. Riggle, by way of bill filed in the Court of Chancery, sought either to obtain a judgment directing the defendant to convey to them certain premises in the Township of Lower, New Jersey, known and designated as Lot 6 in Block 18, upon the payment by them of the reasonable fair value thereof, or in the alternative, to reform a certain deed from said Township to defendant, to the end that said Lot 6 in Block 18 shall be excluded therefrom, and a restraint against an action in ejectment theretofore commenced by the defendant. The said Township of Lower has intervened as a plaintiff, seeking similar relief by way of reformation.
The facts in connection herewith are as follows: The land and premises here involved were a part of a tract which had *375 its heyday in the real estate boom in the late 1920s. There were originally some 1,900 lots which the owner developed and sought to sell. At that time the lands were a portion of the Borough of North Cape May, which subsequently merged with the said Township of Lower in 1946.
There appear to have been only 8 or 9 houses built on this entire tract until 1946. One of these is the subject of the present controversy. As occurred with so many of the real estate dreams of that era, this one evaporated into thin air and left the municipality with few if any taxpayers.
Some time prior to 1946, the testimony does not disclose exactly when, a house was built, supposedly upon lots 7 and 8 in Block 18. By deed dated February 5, 1946, the plaintiffs Riggle obtained title to Lots 7 and 8 in Block 18 for a consideration of $1,500. At that time unimproved lots were selling for from $7.50 to $50 each, with few if any purchasers. The plaintiffs presumed that they were buying the house here in question, which was unoccupied and in sad need of repair. The windows were broken in the house proper, as were those in the shed. The front door had been broken in and the rain and the elements had affected the floors. The baseboards and quarter-rounds were out of place. The lavatory and toilet fixtures were gone. The roof leaked and the plaster was off the walls. As photographs demonstrate, the lawn and garden were overgrown with tall weeds and the surrounding brush had encroached upon the property itself. The house showed that it had been unoccupied for some time and that vandals had taken advantage of this state.
Plaintiffs immediately proceeded, with their own labor, to repair the house and put it into habitable condition, spending all of their spare time every week and for some full weeks at a time in this undertaking. By December of 1946 the house, so far as the exterior is concerned, was in a reasonably presentable condition, including the landscaping. Any one passing must have noticed the work and improvements. All told, plaintiffs expended some $3.150 upon the rehabilitation of *376 the property over a two and one-half year period after the purchase.
At the time of the purchase of Lots 7 and 8 in Block 18, plaintiffs retained a Thomas J. Minnick, Jr., a member of the Bar of the State of Pennsylvania, to represent them. They had an agreement with him that he was to make certain, in their language, that they would obtain a "clear title." They received a title policy from the Cape May County Title & Trust Company insuring the title to Lots 7 and 8 in Block 18 but did not obtain at that time any survey, in order to ascertain whether the house was located in the position which they believed it was, i.e., on the lots which they were purchasing. The details in connection with the title were left exclusively to their counsel.
In November or December of 1946, plaintiffs having decided that they desired additional ground adjacent to one side of their property for landscaping, and for the removal of the fire hazard of the encroaching brush, made application to the Township of Lower for the purchase of Lots 1 to 6 inclusive, in Block 18, which had been assessed both by the Borough of North Cape May and by the Township of Lower as unimproved vacant land, and to which the Borough of North Cape May had obtained title by a voluntary conveyance in lieu of foreclosure of a tax sale certificate. They were then advised by a Township Committeeman, one Edward H. Phillips, that if they would offer $250 for Lots 1 to 6 inclusive in Block 18, the municipality would advertise a public sale thereof, with a minimum bid price of $250. On the date that the lots were put up for public sale, plaintiff Edgar L. Riggle, then being sick in Philadelphia, did not attend. The defendant, Joseph W. Skill, however, was very fortuitously present at the Township committee meeting and offered the sum of $251 for said lots. They were then struck off and sold to him at that price. He testified that he happened to be at the Township committee meeting to transact other business, the nature of which he did not at the time of the trial recall. He also testified that he did not know that the lots were to *377 be sold on that night, never having seen the public advertisement. He admitted that he had purchased lots similarly located for from $7.50 each to $15 each. His sole reason for purchasing the lots here involved for more than $40 each, he stated, lay in his desire to ascertain who the original offerer was. He was prompted to do this by the fact that he had attempted theretofore to purchase lots from the municipality but had been unsuccessful, having been advised that the municipality desired, if possible, to sell the entire development tract to one purchaser, and that he desired to ascertain who had an "in."
As might have been anticipated, when the plaintiffs ascertained that they were not the successful bidders they were somewhat disturbed. Subsequent to this sale, the defendant and a surveyor undertook to survey the property purchased by the defendant. The defendant's excuse for obtaining such a survey lay in an alleged altercation with the plaintiffs as to whether a sign which he had erected to advertise lots 1 to 6 for sale lay upon his property or that of the plaintiffs. At this time, the plaintiffs testified that in an argument with the defendant, upon an inquiry as to why he had desired to purchase these particular lots, the defendant said, "Because your house sits on one of them." This the defendant denies. The subsequent survey does, however, demonstrate that the house which was occupied by the plaintiffs and upon which they made the alterations and repairs, was located as follows:  one-third on Lot 7 and two-thirds on Lot 6. The defendant had not obtained a survey of any of the other lots which he had purchased in this tract.
The defendant admitted that he knew that the plaintiffs were making repairs and improvements on the property. Plaintiffs stated that they were dumbfounded at the statement of the defendant concerning the location of their house.
I find as a fact that the plaintiffs, as well as their grantors, at the time of the purchase of Lots 7 and 8 in Block 18, believed that the house here in question was located on said lots and that the first information the plaintiffs had of the *378 location of a portion of said house on Lot 6 in Block 18 was from defendant, approximately one year after their purchase and after they had expended considerable labor and money for materials in the alteration, repair and beautification of the premises.
I am as well satisfied that the Township officials knew that the plaintiffs were expending money in making repairs upon their premises and that the Township officials, prior to the sale to defendant, as well believed that the house here in question was located on Lots 7 and 8 and that Lot 6 was, in toto, unimproved and vacant land.
Defendant's attitude and demeanor in court, together with his conduct in the entire transaction, lead me to the belief that he actually knew that there was some doubt as to the location of the house. Although he paid only $251 for the purchase of six lots, he demanded $2,400 for his interest in Lot 6.
The theory upon which plaintiffs seek a conveyance to themselves is that equity will afford relief where one erects a building upon the lands of another in the mistaken belief that he is the owner thereof, and the true owner, having knowledge of the improvement, does nothing to apprise the builder of the true situation.
The leading case on this subject is McKelway v. Armour, 10 N.J. Eq. 115 (Ch. 1854), in which the court said, at p. 117:
"But it is proved, beyond all doubt, that the complainant erected his improvements on this lot by mistake; he supposed that it was the lot next that belonged to Armour. Armour labored under the same mistake. He lived in the vicinity; he saw the complainant progressing, from day to day, with these improvements. If he knew this to be his lot, his silence was a fraud upon the complainant; but this is not pretended. He admits that he did not suspect the erections to be upon his lot, until some time after their erection, when by actual measurement, to his surprise, he discovered the mistake. Under such circumstances, it would be most unjust to permit Armour to take these improvements, and to send the complainant away remediless."
This doctrine has been followed by the following cases: Anglescy v. Colgan, 44 N.J. Eq. 203, 9 A. 105 (Ch. 1887); *379 Megie v. Bennett, 51 N.J. Eq. 281, 27 A. 917 (E. & A. 1893); Magnolia Construction Co. v. McQuillan, 94 N.J. Eq. 736, 121 A. 734 (E. & A. 1923); Dorfman v. Lieb, 102 N.J. Eq. 492, 141 A. 581 (Ch. 1928).
It is essential, for a plaintiff to succeed, both that his mistake should not result from his culpable negligence and that the true owner should have had knowledge of the progress of the construction. Friel v. Turk, 95 N.J. Eq. 425, 123 A. 610 (Ch. 1924).
Reformation on the ground of mistake is not granted in equity where the mistake is the result of the complaining party's own negligence. Each instance of alleged negligence must depend to a great extent upon its own circumstances. 3 Pomeroy's Equity Jurisprudence 339; Mullen v. Cronan, 90 N.J. Eq. 392, 107 A. 793 (Ch. 1919); DuPont Chemical Co. v. Buckley, 96 N.J. Eq. 465, 126 A. 674 (Ch. 1924); Rauh v. Bick, 108 N.J. Eq. 1, 153 A. 634 (Ch. 1931).
Where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of a legal duty, equity will not interpose its relief. DuPont Chemical Co. v. Buckley, supra.
It becomes necessary, therefore, first to analyze the conduct of the plaintiffs in order to determine whether they were guilty of negligence. They retained a member of the Philadelphia Bar to supervise the closing at the time they purchased the property in order to be assured of a clear title. Both the plaintiffs and their grantors patently believed that the house was located upon Lots 7 and 8 in Block 18. Lots 7 and 8 were assessed as improved, a value having been placed by the municipality upon the house. Lot 6 was assessed as unimproved. Even the members of the governing body had, since 1926, been under the same mistaken impression as plaintiffs. Plaintiffs obtained, through their counsel, a policy of a reliable title company under the erroneous belief that this assured them of their title to the house. If the defendant is to be believed, even he had no knowledge that the house was *380 partially erected on Lot 6. I find that under these facts, the plaintiffs were not guilty of such negligence as will bar relief, but that they actually did what an ordinarily prudent person would do under the circumstances.
The analogy between the cases above cited, where relief was granted, and the present case, is quite apparent. It is of no moment that in those cases the plaintiffs undertook a new construction, while in the case sub judice they repaired, improved and beautified an existing building. The work which they performed was practically a rebuilding of the premises. The rationale of the reasoning is the same in both instances and the same theories are applicable.
It does not appear how long the Borough of North Cape May had knowledge of the work plaintiffs were doing on the house. It is apparent, however, that the officials of the successor municipality, Township of Lower, knew that plaintiffs were improving the realty in 1946. In November of that year they received their offer for lots 1 to 6 inclusive under the mistaken impression that these lots were unimproved, as they had been assessed for some twenty years. Defendant also had knowledge of the work being performed before he obtained title, as appears from his testimony. It is difficult to conceive that he would not have had such knowledge with his interest in the entire development, with his attempt to purchase lots there, with the location of his real estate office in the general vicinity, and with his trips and visits to the locality. Therefore, I find as a fact that both the Township and the defendant knew of plaintiffs' comparatively large expenditure of time and money.
I find as a fact that the municipal officials did not know of the true location of the house. I find also that under the circumstances, the Borough of North Cape May having, since 1926, assessed Lot 6 as unimproved, and the Township of Lower having depended upon the tax books of said Borough upon the merger in 1946, was not guilty of negligence. There was no way for the Township to ascertain the actual location of all of the houses in this locality short of obtaining a survey *381 on each. This it was not obliged to do. It was entitled to rely upon the records of the predecessor municipality, made when the building was constructed. Both municipalities had collected taxes on Lots 7 and 8 as improved lots. The taxes for the non-payment of which the municipality had obtained title to Lot 6 were computed upon an assessment as if the lot were unimproved. Under all the circumstances, I find that the conduct of the Township was that of an ordinarily prudent person, free of culpable negligence.
I am, however, persuaded that the defendant did have knowledge of the circumstances of the location of the house. His entire conduct satisfies me that this is so. He is, then, guilty of fraud. Conceding, however, for the purpose hereof, that he, as he protests, had no knowledge of the true location, there exists, in any event, a mutual mistake of fact between him and the Township. Under these circumstances, I will reform the deed from the Township, to the end that Lot 6 shall be eliminated from the conveyance to defendant, and reimburse him for the fair market value thereof as an unimproved lot.
In view of my finding that the municipality had knowledge of the extensive work of plaintiffs, tantamount to a rebuilding. I direct that the municipality sell Lot 6 to plaintiffs at a fair and reasonable price, as an unimproved lot.
Since the result of the foregoing is that the municipality must pay the defendant the fair and reasonable value of Lot 6 and the plaintiffs must pay a similar amount to the municipality, each of which amounts will be identical, I will sign an order directing the defendant to so convey direct to plaintiffs upon the payment of said sum.
Judgment will be entered accordingly.