618 A.2d 940

LANCE W. PECK AND DEBRA A. PECK, PLAINTIFFS, v. M.C. DEVELOPERS, INC., LAND SURVEY COMPANY, INC., CAPITAL ABSTRACT CORPORATION, CHICAGO TITLE INSURANCE COMPANY, CITICORP MORTGAGE CORPORATION, LOUIS A. CASCETTI, MICHAEL MCMAHON, CHARLES DOHERTY, AND GORDON SHIPIRO, DEFENDANTS. v. CHESAPEAKE SHORE ENTERPRISES, INC., THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Law Division Cumberland County

Decided November 17, 1992.

*Kozlov, Seaton & Romanini,* Attorneys for Plaintiffs (*Larry S. Byck,* Counsel).

*Veronica, Meloni & Vecchio,* Attorneys for M.C. Developers, Inc., Michael McMahon and Louis A. Cascetti (*Lawrence M. Vecchio,* Counsel).

*Wollman & Gazdzinski,* Attorneys for Land Survey Company, Inc. (*David A. Wollman,* Counsel).

*Capehart & Scatchard,* Attorneys for Chicago Title Insurance Co., (*Charles A. Rizzi,* Jr., Counsel).

*Shapiro & Martone,* Attorneys for Citicorp Mortgage Corporation (*Charles A. Gioino,* Counsel).

*Sheldon M. Blackman,* Attorney for Gordon Shipiro.

*Schulze & Rupinski, P.A.,* Attorneys for Chesapeake Shore Enterprises, Inc. (*Patricia P. Davis,* Counsel).

*Charles Doherty, pro se.*

KLEINER, J.S.C.

This unique motion filed by defendant-third party plaintiff, M.C. Developers Inc., (hereafter Developers), seeks an order of this court authorizing the removal of an improvement from real estate titled in the name of the third-party defendant, Chesapeake Shore Enterprises, Inc., (hereafter Chesapeake). Developers admit this improvement was constructed in error.

On April 17, 1989, plaintiffs, Lance and Debra Peck, were shown two parcels of undeveloped realty in the City of Millville by an agent of Developers. The agent represented that the two parcels were available for sale and were designated as Lot 22

and Lot 24 on the City of Millville Tax Map. A written contract of sale ultimately executed by the Pecks provided that Developers were to construct a "raised ranch" styled home on each parcel.

On October 18, 1989, at the real estate closing, purportedly respecting Lot 22, Developers presented a partially completed deed and a separate proposed metes and bounds description. It represented to the purchasers that the final clerical work, incorporating the metes and bounds description into the deed, would be completed prior to the recordation of the deed. The deed which was ultimately clerically completed and recorded contained a metes and bounds description to Lot 26 and not Lot 22 as was required by the original contract of sale.[1]

Subsequent to the real estate closing, Developers constructed the "raised ranch" model home, previously selected by plaintiffs, upon Lot 26, which lot, however, had been previously conveyed to Chesapeake. Chesapeake contends that it first learned of this erroneous construction on Lot 26 when it received a municipal tax bill reflecting tax liability for both land and improvements. An immediate inquiry by Chesapeake revealed Developers' construction error.

Plaintiffs immediately filed a complaint seeking compensatory damages due to breach of contract and negligence, punitive damages due to common law fraud, and treble damages based upon allegations of consumer fraud. They named Developers and Chicago Title Company, who insured the plaintiffs' titles as defendants. Chesapeake was ultimately joined as a third-party defendant.

Developers, in an effort to mitigate its' ultimate responsibility for this construction error, now seek an order permitting it to remove the "raised ranch" model home from Lot 26 for placement on another unsold lot within the developed tract

---

[1] In a separate settlement on December 26, 1989, plaintiffs accepted title to Lot 24 and that transaction is not the subject of this litigation.

which is still titled in Developers' name. The motion is contested by Chesapeake who contends there is no judicial precedent in New Jersey specifically addressing the issue of judicially ordered removal of improvements from real estate owned by an innocent land owner. Chesapeake relies upon *Friel v. Turk*, 95 *N.J. Eq.* 425, 123 *A.* 610 (Ch.1924) in support of its opposition.

In *Friel*, the defendant conveyed Lot 83 to the plaintiff who thereafter erected a building on Lot 84 which was owned by a third-party, an absentee owner who learned of the erroneous construction twenty months after construction was completed. Plaintiff sought a court order compelling the absentee owner of Lot 84 to convey the lot to him. The court designated the plaintiff a "trespasser" who acted with "culpable negligence" and concluded that "[e]quity will not grant the relief now sought, whose condition is attributable solely to his failure to exercise that diligence which may be fully expected from a reasonable person." *Id.* at 426, 123 *A.* 610.

While the facts surrounding *Friel* are similar to the present case, the relief sought by the moving party in each proceeding is quite dissimilar. In *Friel*, plaintiff sought compulsion of the sale of land from an innocent property owner. Here, the moving party seeks the removal of improvements wrongly constructed from the property of the innocent property owner and the restoration of the property to its status prior to the construction error.

*Brick Township v. Vannell*, 55 *N.J.Super.* 583, 151 *A.*2d 404 (App.Div.1959), although bearing some resemblance to the facts being considered in this motion, also is distinguishable. In *Vannell*, the contractor sought to recover payment for improvements it made to property previously dedicated to the township. In denying the requested relief, the court enunciated a three-pronged test. A trespasser who seeks compensation for improvements must demonstrate: (1) a mistaken belief of ownership; (2) the mistake must not have resulted from the trespasser's culpable negligence; and (3) the true owner must have

had either actual or constructive knowledge of the improvement, but remained silent. *Id.* at 593, 151 *A.*2d 404. Relief was denied as there was little doubt that the builder knew of the prior dedication of the property to the township. In the instant case, although Developers arguably were negligent, there are no contentions that it had actual knowledge of the prior conveyance of the Lot 26 to Chesapeake. Additionally, Developers are not seeking compensation from Chesapeake but rather are only seeking the removal of the mistakenly constructed improvements.

Although New Jersey law is silent in addressing issues of the removal of improvements, other jurisdictions have specifically examined this issue. Generally, these courts have held that improvements mistakenly constructed may be removed if they were made in good faith and the real estate is returned to its proper condition by the remover. The rationale behind these decisions appears to be the prevention of unjust enrichment in favor of the property owner.

In *Citizens and Southern National Bank v. Modern Homes Construction Company,* 248 *S.C.* 130, 149 *S.E.*2d 326 (1966), a bank sought to remove a house on landowner's property, constructed through inadvertence and mistake. The South Carolina Supreme Court imposed a good faith requirement on the bank as a prerequisite to obtaining relief. The Court held that there is no sound reason to deny the relief requested as the property owner would be deprived of nothing to which he is justly entitled and the remedy sought would make both parties whole. To deny the relief would permit the property owner to be unjustly enriched. *Id.* at 135, 149 *S.E.*2d 326.

The Michigan Court of Appeals dealt with this issue in *Governale v. City of Owosso,* 59 *Mich.App.* 756, 229 *N.W.*2d 918 (1975), where the Court found that the city had committed trespass by entering upon plaintiff's land, and ordered the city be permitted to remove water pipes and to restore the land to its proper condition. *Id.* at 762, 229 *N.W.*2d 918. The Court in

*Governale* reviewed the common law position that improvements generally become part of the property, yet rejected this rationale, for taken to its logical extreme the Court believed this principle could lead to inequitable ends and would be in conflict with the doctrine of unjust enrichment. *Id.* at 761–762, 229 *N.W.*2d 918.

In *McCreary v. Lake Boulevard Sponge Exchange Co.*, 133 *Fla.* 740, 183 *So.* 7 (1938), adjoining property owners were mistaken as to the precise location of a boundary line. One property owner constructed a building on the neighbor's property. The Florida Supreme Court held a landowner may compel the removal of a building mistakenly erected on his property, or alternatively, the party who mistakenly constructed the building may be entitled to remove the structure. Both remedies were available to prevent unjust enrichment. This same principle was again enunciated in *Brown v. Johns*, 312 *So.*2d 526 (Fla.App.1975).

We must next examine the court's equitable powers in granting such relief. It is uncontroverted that an action brought in the law division of the county court (now the Superior Court) may yield equitable relief, as well as legal relief, so that all matters in controversy may be completed determined. *Heuter v. Coastal Air Lines Inc.*, 12 *N.J.Super.* 490, 79 *A.*2d 880 (App.Div.1951). *See also Wojcik v. Pollock*, 97 *N.J.Super.* 319, 235 *A.*2d 58 (Law Div.1967). The court has available to it flexible and adoptive remedies, *American Association of University Professors v. Bloomfield College*, 129 *N.J.Super.* 249, 322 *A.*2d 846 (Ch.1974), and as such, may fashion an appropriate remedy.

It is, therefore, the conclusion of this court that it has the authority to fashion an equitable remedy to prevent the unjust enrichment of Chesapeake and to assist Developers, even though arguably a negligent party, to reduce the financial loss resulting from its negligent conduct. A negligent party should not be penalized where an equitable remedy can reduce the

extent of financial responsibility resulting from the negligent act while eliminating the unjust enrichment of even an innocent third-party such as Chesapeake. This can be accomplished by permitting Developers to enter upon Lot 26 to remove the entire building mistakenly constructed and to restore Lot 26 to its unimproved condition. The damages sustained by Chesapeake resulting from its deprivation of the use of its property during the period commencing with Developers' trespass will be reduced. Any consequential damage resulting from the improvement removal process can be ultimately addressed at trial. Similarly, the ultimate financial loss sustained by Developers will be reduced by affording it the ability to resell the improvements which will be placed on an unimproved building lot which it still owns.

For the protection of all parties, the court shall supervise the relief granted. Developers and Chicago Title Company, who has joined Developers in seeking judicial relief, shall submit to the court estimates specifically outlining the entirety of the work to be performed and its attendant expense. Chesapeake may request a plenary hearing [2] to test the accuracy of these estimated expenses, and the court shall determine the precise cost which will be deposited with the court prior to the court authorizing the commencement of the removal process.

---

[2] The movants shall submit to the court and to all other parties cost estimates by February 1, 1993. Chesapeake shall submit counter estimates and shall request a plenary hearing by March 1, 1993.