Leo Buk Lhu, trustee,[1] *vs.* Salvatore J. Dignoti & others,[2]
trustees.[3]

Suffolk. February 8, 2000. - April 21, 2000.

Present: Marshall, C.J., Abrams, Lynch, Greaney, Ireland, Spina, & Cowin, JJ.

*Mistake. Bona Fide Purchaser. Deed,* Tax deed. *Jurisdiction,* Mistake,
Reformation.

In an action seeking an injunction to remove an encroachment of a building
on real property, a Superior Court judge correctly entered summary judg-
ment in favor of the defendants on their counterclaim for equitable reforma-
tion of both parties' deeds based on a mutual mistake as a result of a
surveyor's measuring error, where the defendants demonstrated ample un-
controverted facts to show that the plaintiff was not a bona fide purchaser
of its property without notice of the defendants' claim to the entire build-
ing [294-296], and where G. L. c. 60, § 64, providing conveyance of
absolute title through a tax deed, did not bar a claim for equitable reforma-
tion of such a deed because of mutual mistakes arising from an erroneous
description [296-298].

Civil action commenced in the Superior Court Department on
August 20, 1998.

The case was heard by *Barbara J. Rouse,* J., on motions for
summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Evan T. Lawson* (*Caroline A. Smith* with him) for the plaintiff.
*Linda A. O'Connell* for the defendants.

Cowin, J. The plaintiff, Leo Buk Lhu (Buk Lhu), trustee of
the Barnacle Marina Realty Trust (Barnacle), and the defendants,
Salvatore J. Dignoti, Richard L. Kanter and Frederic S. Clayton,
trustees of the Wharf Nominee Trust (Wharf), are abutting
landowners. Barnacle, claiming that Wharf had encroached 252
square feet onto its property, commenced an action in Superior

---

[1] Of the Barnacle Marina Realty Trust.
[2] Richard L. Kanter and Frederic S. Clayton.
[3] Of the Wharf Nominee Trust.

Court seeking an injunction to remove the encroachment and requesting monetary damages. Wharf counterclaimed for equitable reformation of both parties' deeds based on a mutual mistake as a result of a surveyor's measuring error. A Superior Court judge allowed Wharf's motion for summary judgment for a reformation of the deeds. We granted Barnacle's application for direct appellate review and affirm the Superior Court judgment.

We summarize the essential undisputed facts in the summary judgment affidavits and accompanying material. See *Longval* v. *Commissioner of Correction*, 404 Mass. 325, 327 (1989). We include as well facts conceded by Barnacle at oral argument. The two pieces of property at issue are located on Atlantic Avenue in Boston (city). Originally, the land was owned as a single parcel by the Blue Water Trust (Blue Water). On May 8, 1984, Whitman & Howard, Inc. (Whitman & Howard), prepared a plan of this area (plan) that subdivided the property into two lots, known as Lots 2 and 3. The plan showed a wood building on Lot 3, which housed a restaurant, and a marina and water on Lot 2. As Barnacle conceded at oral argument, at the time of the subdivision, the parties to the original deeds intended that Lot 2 contain only the marina and the water and that Lot 3 contain only the building. The plan also contained measurements of the property, and some of the measurements, unbeknownst to Blue Water and Whitman & Howard, were incorrect due to a surveyor's measuring error. (It is this error that is at the center of this case.) A surveyor's report, prepared by Whitman & Howard at the same time, stated that no encroachment or overhanging projections existed on Lots 2 and 3.

Following this subdivision, on June 22, 1984, Blue Water conveyed Lot 2 to the Marina Nominee Trust (Marina) and Lot 3 to Wharf.[4] The deeds to Lots 2 and 3 referred to the plan and, as a result of the incorrect measurement on the plan, contained an incorrect metes and bounds description. On October 6, 1986, the city took Lot 2 subject to any rights of redemption because Marina had failed to pay property taxes. These rights of redemption were foreclosed on July 9, 1992.

Philip Y. DeNormandie purchased Lot 2 from the city on March 29, 1995, and received a tax collector's deed pursuant to

---

[4]Richard L. Kanter, Frederic S. Clayton, and Salvatore J. Dignoti were the trustees for both Marina and Wharf.

G. L. c. 60, § 64.[5] On April 4, 1995, David Pogorelc, then trustee of Barnacle, purchased Lot 2 from DeNormandie. Pogorelc transferred his beneficial interest in Barnacle to Buk Lhu in July, 1997.[6] A survey of Lot 2, in October, 1997, revealed that a portion of the building on Lot 3, which housed the Boston Sail Loft Restaurant, encroached on Lot 2. Until Barnacle had Lot 2 surveyed in 1997, it had never asserted any ownership interest in any part of Lot 3.

A Superior Court judge ruled that the deeds held by Barnacle and Wharf must be reformed to reflect the original intent, at the time of the subdivision, that Lot 2 contain only the marina and water and Lot 3 contain the building. On appeal, Barnacle contends that summary judgment was inappropriate because (1) there are disputed issues of material fact whether Barnacle is a bona fide purchaser for value without notice (bona fide purchaser); and (2) the tax title purchased by Barnacle's predecessor in title for Lot 2 is an absolute title that prevents a claim for equitable reformation.

1. *Bona fide purchaser.* It is well established that legal instruments, including deeds, may be reformed on the ground of mutual mistake. *Mickelson* v. *Barnet*, 390 Mass. 786, 791 (1984), and cases cited. *Reder* v. *Kuss*, 351 Mass. 15, 17 (1966). *Raymond* v. *Jackson*, 297 Mass. 509, 512 (1937). The original deeds conveyed to Marina and Wharf contained a mutual mistake resulting in an error. The metes and bounds description in the deeds did not reflect the intent of the parties to place the building on Lot 3 and the marina and water on Lot 2.

However, a deed may not be reformed against a bona fide purchaser on the ground of a mutual mistake. *Burke* v. *McLaughlin*, 246 Mass. 533, 538 (1923), and cases cited. Barnacle argues that the burden of showing that it is not a bona fide purchaser of Lot 2 rests with Wharf and that Wharf has not met this burden. Barnacle, however, misconstrues its burden at the

---

[5]Section 64 provides, in relevant part, that "[t]he title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption . . . ."

[6]Pogorelc was both trustee and beneficiary of Barnacle. He sold his beneficial interest to Lhu and then resigned as trustee. Lhu was then appointed trustee.

summary judgment stage of the proceedings.[7] At summary judgment, Wharf, as the moving party, was required affirmatively to demonstrate that there was no genuine issue of material fact concerning Barnacle's status as a bona fide purchaser.[8] *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). Once Wharf made that showing, in order to defeat summary judgment, Barnacle was required to respond by alleging specific facts that would establish the existence of a genuine issue of material fact regarding Barnacle's bona fide purchaser status. *Id.*

Wharf demonstrated ample facts to show that Barnacle was not a bona fide purchaser. Barnacle's conduct before and after the purchase indicates that it had actual notice that the building was located entirely on Lot 3 and did not intend to purchase any part of that building. Just prior to purchasing the property, Barnacle's trustee attended an "open house" to view Lot 2. At that time, he reviewed the lot and examined the proposal prepared by the city describing the lot as containing a marina and consisting entirely of "water area" and "no upland area." The proposal made no reference to the building as a part of the Lot 2 property.[9] After purchasing the property, Barnacle purchased insurance for Lot 2 and never indicated to the insurer that the property contained a building. Finally, from 1995 when Barnacle purchased Lot 2 until the survey of the property in October of 1997, Barnacle never challenged Wharf's assertion of ownership of the entire building.

In response to Wharf's showing, Barnacle failed to allege any specific facts creating the need for trial. Barnacle merely recites facts surrounding the transfer of Lot 2 from the city to DeNormandie to Barnacle. It does not allege any specific facts creating a genuine issue of material fact whether it had actual notice of Wharf's claim of ownership over the disputed property. Thus, the Superior Court judge properly determined that no genuine issue of material fact existed regarding Barnacle's bona fide purchaser status. Given these facts, established for purposes of

---

[7] Barnacle argues that it had no burden whatsoever to allege facts regarding its bona fide purchaser status.

[8] At trial Wharf would have the burden of showing that Barnacle is not a bona fide purchaser. *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634 (1974).

[9] The only reference to Lot 3 in the proposal is that a steel ramp and walkway on Lot 3 provide access to a timber platform on Lot 2. The only reference to the building is that the Boston Sail Loft is "immediately adjacent to the subject property . . . ."

summary judgment, Barnacle was not a bona fide purchaser. Barnacle purchased the deed to Lot 2 with knowledge that the entire building was located on Lot 3 and never intended to purchase any more than the water and the marina located on Lot 2.

2. *Tax deed.* Barnacle argues that, regardless of its status as a bona fide purchaser, it is entitled to ownership of the disputed property because it possesses absolute title through a tax deed to Lot 2. We disagree. Barnacle's possession of a tax deed does not prevent an action for equitable reformation to correct an error in the tax deed resulting from a mutual mistake.

Barnacle relies on G. L. c. 60, § 64, which provides that the title conveyed by a tax deed is "absolute after foreclosure of the right of redemption by decree of the land court." The absolute title conveyed under § 64, however, extinguishes only the interests of any party claiming rights "through the record owner, such as 'mortgagees, lienors, [or] attaching creditors.' " *Sandwich* v. *Quirk*, 409 Mass. 380, 384 (1991), quoting G. L. c. 60, § 66. The purpose of absolute title under § 64 is to clear the new title of all encumbrances placed on the property by the prior record owner. *Sandwich* v. *Quirk, supra*; *Crocker-Mc-Elwain Co.* v. *Assessors of Holyoke*, 296 Mass. 338, 349 (1937). Wharf's claim of ownership does not arise from an encumbrance placed on Lot 2 by a prior record owner. Rather, Wharf makes an independent claim of ownership through its own deed. Thus, § 64 does not bar a claim for equitable reformation of a tax deed because of a mutual mistake.

Our conclusion that possession of a tax deed does not prevent an action for an equitable remedy to correct a mutual mistake is consistent with cases from other jurisdictions. In *Riggle* v. *Skill*, 7 N.J. 268 (1951), the Supreme Court of New Jersey upheld a decision permitting the reformation of a tax deed because of a mutual mistake by the municipality and the defendant, the purchaser of the tax deed. *Id.* The plaintiffs bought two lots which they thought contained a house. *Riggle* v. *Skill*, 9 N.J. Super. 372, 375 (1950). The defendant purchased a tax deed to the lot abutting the plaintiffs' property which mistakenly contained the plaintiffs' house. *Id.* at 376-377. The court held that the municipality did not mean to convey and the defendant did not mean to purchase the land containing the plaintiffs' house. *Id.* at 381. The court held that in these circumstances it was proper to reform the tax deed to reflect the parties' inten-

tions so that the plaintiffs did not suffer hardship because of the error in the defendant's tax deed. *Id.*

The Supreme Court of Florida, in *Crompton* v. *Kirkland*, 157 Fla. 89 (1946), reached a similar conclusion. The plaintiff, a party not involved in a tax sale, brought suit to enjoin the holder of a tax deed from seeking to eject him from disputed property and to reform the tax deed. The description of the land in the tax deed included land owned by the plaintiff. *Id.* at 93. The plaintiff alleged in his complaint that, while the tax deed on its face included the disputed land, it was an erroneous description and it was common knowledge to abutting landowners and the taxing authority that he and his predecessors in interest had ownership of part of the described land. *Id.* at 91-92. The court held that it was proper for the plaintiff to seek reformation of the tax deed to correct the erroneous description of land. *Id.* at 94-95. The court recognized that when a party claims an interest in land based on his own title and the description in his title conflicts with the terms of a tax deed, an equitable claim for the reformation of the tax deed is an appropriate remedy. *Id.*

In a similar situation, the Supreme Court of Michigan, in *Mc-Creary* v. *Shields*, 333 Mich. 290 (1952), held that an equitable remedy was appropriate to correct an error arising from a tax deed. One of the plaintiffs had purchased a lot, called Lot K, pursuant to a deed that mistakenly described the adjacent vacant lot, called Lot L. *Id.* at 291. Because of the error in the deed, the plaintiff mistakenly paid taxes on Lot L rather than Lot K. *Id.* at 292. As a result of the unpaid taxes on Lot K, the State received title to Lot K through delinquency proceedings and it conveyed the property to the defendant. *Id.* The State believed it was selling, and the defendant believed she was purchasing, Lot L. *Id.* at 293. The court stated that in these circumstances the defendant "has no just ground for complaint that she is not allowed to unjustly enrich herself out of the error common to all three parties." *Id.* at 294. Thus, the court concluded that a constructive trust requiring the defendant to convey Lot K to the plaintiffs and requiring the plaintiffs to reimburse the defendant for her purchase price of the disputed lot was the proper remedy. *Id.* at 296.[10]

These cases accord with our view that the conveyance of a

---

[10]Barnacle erroneously relies on *Picerne* v. *Sylvestre*, 113 R.I. 598 (1974). There the Supreme Court of Rhode Island described a tax deed as "an independent grant from the sovereign which bars or extinguishes all former

tax title does not preclude an equitable remedy to prevent a party from being unfairly deprived of its land. We conclude that in the circumstances of this case reforming the deeds is a proper remedy. It is apparent that Barnacle, the city, and Wharf all believed that Wharf owned the disputed area. Refusing to reform the tax deed deprives Wharf of property that all parties believed Wharf owned since it purchased Lot 3 in 1984 and would allow Barnacle "to reap the harvest of a bargain [it] never intended to make." *Burke* v. *McLauglin*, 246 Mass. 533, 540-541 (1923).

*Judgment affirmed.*

---

titles, interests and liens not specifically excepted." *Id.* at 600. Barnacle argues that this broad language indicates that possession of a tax deed extinguishes all possible claims, including the claims of adjacent property owners. However, the language used refers only to those claims that arise from the chain of title of the property subject to the tax deed. The language does not refer to claims arising from the independent chain of title of adjacent property owners. Thus, the *Picerne* case does not provide any guidance regarding whether a tax deed extinguishes a claim of an adjacent property owner for reformation because of mutual mistake.