No. 9852.

RADETSKY *v.* PALMER, COUNTY TREASURER, ET AL.

Decided April 4, 1921. Opinion modified and confirmed July 5, 1921.

Action to compel county treasurer to transfer tax certificates. Decree for defendants.

*Affirmed.*

1. TAX SALES—*Assignment of Certificates—Power of County.* The authority of county officials to dispose of tax certificates upon property bid in by the county, is fixed and limited by the provisions of sec. 4, chap. 140, S. L. 1913, p. 569.

2. *Tax Certificates—Preferred Purchasers.* In fixing a less sum than the face value at which tax certificates may be assigned, the board of county commissioners has no power to prefer purchasers.

3. APPEAL AND ERROR—*Intervention.* Where no objection is made to a petition in intervention, and no exception reserved to the

order admitting it, assignment of error based thereon is unavailing.

4. CONTRACT—*Unilateral*. A contract in which there is no mutuality between the parties may not be enforced.

5. SPECIFIC PERFORMANCE—*Personalty*—*Equity*. Specific performance rests in the sound discretion of the court, and unless equity demands, it will not be decreed. It is directed in contracts concerning personal property only when the circumstances are such that the property has some special value for which compensation cannot be made.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. SIMON QUAIT, Mr. SAMUEL GINSBERG, Mr. PHILIP HORNBEIN, for plaintiff in error.

Messrs. BARTELS & BLOOD, Mr. JOHN S. MACBETH, Mr. S. D. CRUMP, Mr. E. M. NOURSE, for defendants in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THE parties, plaintiff and defendants, occupy the same position here as in the court below and are hereinafter so designated. The Colorado Yule Marble Company (hereinafter referred to as "the company") was in the hands of a receiver, first defendant Manning, later succeeded by defendant Steele. Its property was sold in separate parcels under mortgage foreclosure and defendants Blood, Myers and Patterson, became the purchasers thereof. Defendant Mason appeared as a taxpayer on behalf of himself and others.

The property of the company was sold for the taxes of 1913, 1915 and 1916 and bid in by the county of Gunnison. The county commissioners, by resolution of date August 2, 1918, sold the certificates to the plaintiff, providing he should pay the sum of $25,000, from which should be deducted the taxes of 1917 and 1918, and the balance prorated on the certificates. The 1918 tax was not yet

due but the resolution provided that $6425 of the $25,-
000 should be set aside for its payment until the treasurer
should receive the assessment roll and then applied. Should
that sum be insufficient the county would pay the balance,
should it be excessive the county should be entitled to the
excess. The resolution further specified that the certifi-
cate for the sale of 1916 described the property in the
wrong range and provided that "the county of Gunnison,
if necessary, at the request of the said M. S. Radetsky will
take any action within its power to make said certificate
valid, or to protect the said M. S. Radetsky in the amount
of taxes represented by said certificate."

A second resolution was passed on the subject under
date of August 5, 1918, specifying a sale of these certifi-
cates to plaintiff under a similar arrangement, setting
forth the certificates sold and the amount to be paid for
each, but showing an apportionment as provided in the for-
mer resolution, and providing that errors should be added
to, or deducted from, the 1916 certificate, and that, in the
event of certain contingencies, plaintiff might retain the
sum of $6425 and the sale be consummated for the remain-
ing certificates, and "this sale shall be considered as if made
for the total sum of $25,000, less the said sum of $6425,
and the said M. S. Radetsky shall pay in full the taxes for
the year 1918 on the certificates tabulated herein." Fur-
ther that the plaintiff "having agreed to this resolution the
same shall be considered as a supplement to the resolution
passed by this board on the 2nd day of August, 1918."

The resolution further directed and ordered the treas-
urer to assign the certificates to plaintiff upon payment
by him of the several amounts. Under date of August 5,
1918, in a communication addressed to the board, plaintiff
confirmed the "agreement" as set forth in the resolutions
and accepted the terms thereof.

The defendant treasurer having refused to comply with
these resolutions and assign these certificates to plaintiff,
the latter brought this action, in the nature of specific per-
formance, to enjoin him from making an assignment of

them to any other person, and for a mandatory injunction compelling the assignment to plaintiff in accordance with the resolutions.

To an amended complaint the defendants Blood, Patterson and Myers demurred, and defendants Palmer, Mason and the receiver answered and moved for judgment on the pleadings. By agreement of counsel these motions and the demurrer were heard together. All were sustained, motion for new trial dispensed with, and final decree entered in favor of defendants. To review that judgment plaintiff brings error.

BURKE, J. After stating the facts as above.

Numerous questions are raised by this record and argued at length, only one of which we find it necessary to determine, i. e., the power of the board of county commissioners to make the alleged contract evidenced by the resolutions of August 2, and August 5, and plaintiff's acceptance thereof under the latter date.

A general control over the business and property of the County is vested in the board of county commissioners by sections 1288 and 1313, M. A. S. 1912, under which the power of the board contended for might be upheld but for the provisions of section 4, p. 569, L. 1913, which specifically directs the manner in which tax sale certificates held by the county shall be disposed of. This section authorizes the treasurer to sell such certificates upon payment to him of the full amount thereof plus interest, penalties, his fees for the assignment, and subsequent taxes, or "for such sum as the board of county commissioners at any regular or special meeting may decide."

The purported sale to plaintiff in the instant case was for less than the full amount called for by the certificates and the foregoing section is the only law under which a sale and assignment can be made. The power of the board is therefore limited in every such case by the express provisions of that section.

"County authorities exercise no power that is not conferred by the constitution or by the legislature. * * *

Any action on their part which is not thus sanctioned would be *ultra vires*, and of no binding force as against the corporation." *People ex rel. Seeley v. May,* 9 Colo. 404, 408, 12 Pac. 838, 840.

In discussing language identical with that in the act above quoted the Court of Appeals said that while this section—

"confers upon the board of county commissioners authority to determine the sum at which the certificate may be sold, it does not further extend the authority of the board, * * * whose authority is limited to the fixing of the sum at which the treasurer may transfer the certificate to the intending purchaser." *Empire Ranch & Cattle Co. v. Neikirk,* 23 Colo. App. 392, 395, 128 Pac. 468, 470.

In the instant case the board did not even fix a sum at which these certificates should be assigned by the treasurer. It fixed a *lump sum* to be paid by *plaintiff* covering all the certificates, the expense and fees of the treasurer, and subsequent taxes. By its second resolution it attempted to apportion these, but the basis remained the same and the resolutions must be construed together. The authority ostensibly given to the treasurer was not even to assign for the amounts named, but to assign to Radetsky. Had the treasurer, upon default of Radetsky, attempted to assign to any other person he would have been acting without authority. In fixing a less sum than face value at which tax certificates may be assigned the board has no power to prefer purchasers. Other details of this pretended contract are outside the limits of the board's authority as circumscribed by said section 4, *supra,* and as construed in *Empire Ranch & Cattle Company v. Neikirk, supra.*

It is immaterial whether the judgment of the trial court be supported on the motions, or the demurrer, and unnecessary to determine the standing of the defendants Blood, Myers and Patterson. As to the latter it is sufficient to say that no objection was made to their petition in intervention and no exception reserved to the order admitting them. *Balfe v. People,* 66 Colo. 94, 98, 179 Pac. 137.

Even were the contract in question otherwise valid there is no mutuality. It provides that in case of plaintiff's non-compliance "this resolution shall no longer be of any force or effect." It was optional with plaintiff to pay or not. Such deficiency is not cured by plaintiff's acceptance of August 5. In this acceptance he merely says, "I hereby confirm and accept the terms of said resolutions." Hence, by the express terms of the contract, the county was still without a remedy against him should he fail to pay the money and take the certificates. Plainly the contract by its very terms is unilateral and plaintiff accepted it with all of its conditions, including the one that his failure to pay should nullify it.

Moreover, the complaint shows no equity. No reason appears why plaintiff has not an adequate remedy at law by mandamus, or in damages. Specific performance rests within the sound discretion of the court. Unless equity demands, it will not be decreed. It is directed in contracts concerning personal property only when the circumstances are such that the property has some special value for which compensation cannot be made. No such condition appears here. As shown upon the face of the bill itself manifest injustice would be done the county if specific performance were decreed. Under such circumstances a court of equity will not, and should not, decree specific performance.

Finding no reversible error in this record the judgment is affirmed.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE WHITFORD not participating.

MR. JUSTICE DENISON concurs in the conclusion, but not in that part of the opinion concerning the mutuality of contract.