No. 12,000.

IRELAND *v*. GUNNISON MOUNTAIN COAL AND COKE
COMPANY ET AL.
(286 Pac. 280)

Decided March 3, 1930.   Rehearing denied March 31, 1930.

194

Mr. CLARENCE L. IRELAND, pro se.

Mr. SIDNEY MORITZ, JR.,; Mr. JOHN F. MAIL, for plaintiff in error.

Messrs. VINCENT & BOWIE, Mr. ROBERT E. WINBOURN, Attorney General, for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

WE adhere to our conclusion affirming this judgment. However, since additional authorities cited and a new question raised on the rehearing should be noticed, and a portion of our original opinion is now considered immaterial, that opinion is withdrawn and this substituted.

Plaintiff in error is hereinafter referred to as plaintiff, and defendant in error as the company.

Certain property of the company went to tax sale in 1922 and 1923, and was struck off to Gunnison county. Later the certificates were transferred to plaintiff. Alleging the illegality of said sales and transfers, the company, in an equity suit, sought relief against plaintiff and the county treasurer. After service in that action the treasurer issued deeds on part of the certificates, and as to the tracts therein included plaintiff brought ejectment. The two suits were tried as one. Judgment was for the company and plaintiff brings error. The pleadings are voluminous and involved, and 31 alleged errors are assigned. We can find no justification for following these ramifications. The answer to a single question seems to us to dispose of this litigation. The question is: On cancellation of these deeds and certificates should plaintiff recover on the basis of their face, plus subsequent taxes and redemption penalties, or only, as the trial court held, on the basis of the amount actually paid, with the usual legal interest? The difference is approximately $15,000.

■ Plaintiff conceded that his deeds "are voidable." His situation is still worse. His deeds recite in one case that the sale was held on November 25, 1922, and in the other that the sale was held on November 24, 1923, and give no reason for failure to comply with the statute, section 7410, C. L. 1921, which requires that such sales "shall commence on or before the second Monday in November." The second Monday in November, 1922, was November 13, and the second Monday in November, 1923, was November 12. This fact invalidates the sales and makes these deeds void on their face. *Kingore v. Wallace,* 85 Colo. 381, 276 Pac. 332.

■ Plaintiff's right of recovery is settled in this jurisdiction. *Charlton v. Kelly,* 24 Colo. 273, 50 Pac. 1042; *Pueblo Realty Co. v. Tate,* 32 Colo. 67, 75 Pac. 402. What is there said, however, concerning "the amount for which the land was sold at the tax sale," being applicable to a case in which claimant bought at the tax sale, and said amount being the identical amount which he paid, those authorities settle nothing concerning the point here in controversy.

We have held that the basis of this right of recovery is the maxim that "He who seeks equity must do it." *Young v. Rohan,* 77 Colo. 70, 234 Pac. 694. Unaided by statute the maxim is defeated by the rule of caveat emptor.

"This [caveat emptor] is the rule unless the statute recognizes an equity in him [the purchaser] and provides for it." Cooley on Taxation (3d Ed.) Vol. 2, p. 1017.

"The only recognition which they [purchasers at invalid sales] could ask was such as resulted from an application of equitable principles to their situation." *Dayton, Trustee, v. Stanard, Treas.,* 241 U. S. 588, 36 Sup. Ct. 695, 60 L. Ed. 1190.

"Clearly this [allowance of eight per cent instead of excessive interest provided by redemption statutes] is a recognition of the equitable rule that he who seeks equity

must do equity." *Langley v. Young,* 72 Colo. 466, 211 Pac. 640.

The underlying purpose of such statutes being to substitute for a harsh rule of law the more benign one of equity they must be read in the light of the latter.

We are asked now to hold that the true rule is to be found, not in the case of *Langley v. Young, supra,* decided by this court en banc, without a dissent, nor yet in *Dayton v. Stanard, supra,* decided by the Supreme Court of the United States, but in the reversed decision of the United States Circuit Court of Appeals in *Stanard v. Dayton,* 220 Fed. 441. We can not do such violence to the rule of stare decisis. We think it no answer to the foregoing to cite cases "where the court held the sale itself to be invalid" and where "the right to redemption money was unquestioned," hence do not examine them.

That such statutes in other jurisdictions are based upon this maxim of equity and construed with reference to it seems clear. Black on Tax Title (2d Ed.) §468. Applied to the instant case this rule requires the company to reimburse plaintiff for his expenditures, with the usual statutory rate of interest thereon, nothing more.

Plaintiff says his contention is upheld by *Charlton v. Kelly, supra,* and *Buchanan v. Griswold,* 37 Colo. 18, 86 Pac. 1041. We have already pointed out that the Charlton case is not in point, and this in spite of what is said in the Buchanan case concerning its applicability there. This must be true in view of the fact that Charlton purchased his certificates for the full amount and paid subsequent taxes in full, hence the question here raised could not possibly have been there involved. It remains to examine the Buchanan case. In that opinion we said: "The purchase from a county of a tax-sale certificate issued to it vests the purchaser with the same rights as though he had been the original purchaser at the tax sale. The owner of property who neglects to pay his taxes cannot take advantage of any reduction which the purchaser of his property at a tax sale may have made in disposing

of the tax-sale certificate. That is a matter of contract between the seller and purchaser, with which the owner is not concerned." The validity of the sale in that case was unquestioned. Here the sale was void and the "purchase" a pretense. The case is not in point.

We are now urged to reverse this judgment on the grounds of public policy, because: (1) It is the duty of officials to collect the largest possible proportion of the public revenue; (2) the sale to plaintiff was for three times the company's offer; (3) to deny profits to purchasers at illegal sales discourages tax buyers and hampers collections; (4) penalties for nonpayment are legislative and must not be denied by the courts; (5) the company was engaged in an illegal attempt to discharge its taxes for a pittance; (6) an affirmance will violate the rule announced in *Radetsky v. Palmer,* 70 Colo. 146, 199 Pac. 490, and thus hamper tax collection.

1. Such a duty is unquestioned, but its discharge will not be promoted by a plan to divert into the pockets of speculators the $15,000 margin which is here lost to the county.

2. If the company would pay three times its offer to plaintiff, it is improbable it would pay less to the county.

3. This is doubtless true, but the statement has no relation to public policy. The same argument would support a statute making mandatory the issuance of tax deeds regardless of the legality of assessment or levy. The state can have no interest in favoring illegal sales which her courts are bound to recognize.

4. Very true, but the statement begs the question which is: What are the penalties? That question is here judicial.

5. If the method attempted was illegal, there could be no discharge, hence no injury to the state. Certainly public policy does not require that the illegal attempt of one person be rebuked by ratifying the illegal acts of others.

6. This is based upon the assumption that the

company's redemption of these certificates discharges the lien of its taxes. That can not be true unless the sales on which the certificates were issued were valid, and unquestionably they were not. Whoever took these certificates, under the circumstances, took nothing but a lien to the extent of their payments and interest, and that only because of the statute and rule of equity. These the company must pay because of its neglect to pay its taxes, and the requirements of the same rule; but since the sale was void it could not operate to discharge the tax, and only so much thereof is paid as is covered by the money actually received by the county. Thus Ireland recovers his investment with legal interest, the company gets credit for the money paid, and an affirmance helps rather than hinders collection of the state's revenue.

The judgment is affirmed.

MR. JUSTICE BUTLER specially concurring.

I concur in the affirmance of the judgment. The tax sale, being void, passed to the purchaser (the county) no title to or interest in the property. The company's title remained unaffected by the sale. The company continued to own the property after the void sale the same as before, subject to all unpaid taxes. The county, having acquired by the sale no title or interest, passed none to Ireland by the assignment of the certificates. The payment by Ireland to the county inured to the benefit of the company; it amounted to a payment of a part of the taxes due by the company, leaving the balance due and unpaid. Though the sale passed no title or interest, the recording of the tax certificates clouded the company's title, and when the company seeks the interposition of a court of equity to remove that cloud, it should be required to do equity. As the company received the benefit of a part payment of its taxes by Ireland, equity requires the company to reimburse Ireland for the amount paid by him, with interest thereon at the rate of 8 per cent per

annum, but it does not require the company to do anything more. As the judgment ordered such reimbursement as a condition to the removal of the cloud, it is properly affirmed.