No. 14,168.

BOARD OF COUNTY COMMISSIONERS OF MOFFAT COUNTY ET AL. *v.* UTAH-COLORADO LAND AND LIVESTOCK COMPANY.
(73 P. [2d] 987)

Decided November 15, 1937.

Mr. J. F. MEADOR, for plaintiffs in error.

Mr. ADDISON M. GOODING, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

IN 1935 defendant in error, to which we shall hereafter refer as plaintiff, acquired a number of tax sale certifi-

cates on real property situate in Moffat county by purchase and assignment from the county at a less amount than the face value thereof. After acquiring the certificates plaintiff made request for treasurer's deed, but before the deed issued the property covered by four of the certificates was redeemed by the owners. Plaintiff then demanded from the county treasurer the full amount paid for the redemption of the property, which demand was refused by the treasurer, whereupon plaintiff instituted this proceeding against the board of county commissioners and treasurer of Moffat county, who are the plaintiffs in error here and to whom we shall refer as defendants, to require payment to plaintiff of the full amount of redemption money.

By way of an affirmative defense defendants allege in their answer that plaintiff came before the regular meeting of the board of county commissioners and then and there offered and proposed to buy certain tax sale certificates at such discount as the plaintiff and the commissioners could agree upon, and that ''pursuant to said offer of the plaintiff the board of county commissioners agreed to sell to the plaintiff, and to authorize the county treasurer to assign and deliver and the plaintiff agreed to buy, each and every one of the * * * certificates,'' (here follows a list of the certificates, with individual percentages of the face varying from 25 per cent to 75 per cent fixed as the purchase price), ''and thereupon the county commissioners adopted a resolution * * * authorizing the county treasurer to assign said certificates for the percentages aforesaid, without however designating or naming the purchaser of the same, and the plaintiff immediately thereafter paid to the county treasurer the amounts required to purchase each of said certificates, calculated according to said respective percentages.'' Defendants further alleged, ''That at the time of the aforesaid transaction and as a part thereof, it was agreed further by and between the plaintiff and the defendant the board of county commissioners that in event of the redemption of

any of said tax certificates, so sold and assigned to the plaintiff, the plaintiff should and would be repaid only the amount of money it had paid for such tax certificates so redeemed, plus its proportionate interest accruing to the same at the time of redemption.''

These allegations were denied by plaintiff's replication. Upon such issues the case was tried to the district court without a jury and judgment rendered in favor of plaintiff.

In their brief defendants assert that the ''important issue'' is whether the holder of a certificate acquired from the county for less than the face is entitled to the full sum paid on redemption, where such holder actively and directly ''sought and engaged the county commissioners in a transaction whereby it acquired a number of certificates at preagreed discounts,'' and attempt to support this contention by the cases of *Thompson v. Board of Commissioners,* 91 Colo. 214, 14 P. (2d) 194; *Klein Land Co. v. Thompson,* 99 Colo. 422, 63 P. (2d) 450; and *Radetsky v. Palmer,* 70 Colo. 146, 199 Pac. 490. It is extremely doubtful whether the quoted allegations of the answer, as a matter of law, raise the question suggested in defendants' brief, or any issue, of an illegal bulk sale or an attempted preference of a purchaser, but even if considered as so doing, the evidence in the case entirely eliminates it from the inhibition proscribed by the cases just cited. Generally, these cases are authority for the rule that the statutory power of the county commissioners, in fixing the purchase price for tax sale certificates held by the county, is limited to establishing a price at which each certificate shall be sold and that they may not legally make a bulk sale of certificates for a lump sum, nor to a particular purchaser. In *Radetsky v. Palmer, supra,* the resolution of the board designated Radetsky as the purchaser and the transaction was thereby held illegal. In *Thompson v. Board of Commissioners, supra,* the agreement between the commissioners and the purchaser of the tax sale certificates disclosed unequivocally a contract for

a bulk sale for a lump sum to a particular purchaser and so was condemned. Further, there, the particular purchaser, after the adoption of the resolution, forthwith and immediately purchased the certificates from the treasurer. The case of *Klein Land Co. v. Thompson, supra,* arose out of the same transaction as *Thompson v. Board of Commissioners, supra,* and the rules therein announced on this subject were based upon the premise of the former case.

In the case at bar it appears from the testimony of defendants themselves that Mr. Winder, the vice-president of the plaintiff company, appeared before the board of county commissioners at regular session with a list of various outstanding tax sale certificates belonging to the county, which had been furnished to him by the treasurer, with the idea of acquiring at a discount a number of these certificates and ultimately tax title to the lands covered thereby. The plaintiff's representative stated what the company would be willing to pay, certificate by certificate, and in each instance the board, after discussion of the matter, determined the specific amount for which it would authorize the treasurer to make the assignment. In many instances the price fixed by the board was in excess of the amount suggested by the plaintiff. After conclusion of the negotiations the board directed the county attorney to prepare a resolution, which was in regular form with a separate assessment of the purchase price of each certificate and which did not name the purchaser or place any restrictions whatsoever upon the transaction. This resolution was transmitted to the county treasurer through the ordinary channels and, contrary to the allegations of the answer, the plaintiff company did not purchase from the county treasurer any of the certificates involved in the case at bar until at least two weeks, and in case of some others in the general transaction for two months, after the resolution had been adopted, during which intervening period anyone who was so minded could have purchased the certificates upon the same basis

they were acquired by the plaintiff. There is not an iota of evidence to the effect that the plaintiff ever agreed to purchase, or did purchase, each and every one of the certificates described in the resolution nor that the board did more than fix a price at which the individual certificates might be assigned by the treasurer, as was within their unquestioned authority under chapter 142, section 247, '35 C. S. A. It is not intimated or suggested that any collusion existed between the board of county commissioners and the plaintiff or that duress or fraud was practiced by plaintiff. In fact, the testimony shows a definite desire on the part of the commissioners to secure as much as possible for the certificates, and a separate consideration of the factors involved in fixing the purchase price of each. Under this state of facts it seems obvious that by no theory can this transaction be deemed a bulk sale of tax certificates or an attempt to prefer a particular purchaser.

 Whether the second part of the affirmative defense, alleging an agreement whereby, in the event of the redemption of any of the property for which the certificates were issued, the plaintiff should receive only the money it had paid therefor with statutory interest, is legally sufficient, we do not find it necessary to determine, since the evidence likewise wholly fails to support it. The testimony of Mr. Rogers and Mr. Deakins, who were members of the board of county commissioners when the transaction took place and who were the only witnesses called by the defendants on this issue of fact, was to the effect that Mr. Winder, the vice-president of the plaintiff company, who appeared before the board in connection with the transaction, was told, either by a member of the board or by Mr. Meador, the county attorney, that in the event of a redemption of any of the property involved, the plaintiff would get its money back plus interest. According to the testimony of both the commissioners, Mr. Winder made no reply to the alleged statement. Mr. Winder, called by defendants for cross-examination under the

statute, testified that he had no recollection of any agreement or understanding of the character relied upon by the defendants. The resolution of the board authorizing the sale by the treasurer is silent on the subject of what should happen in event of redemption. While no specific findings of fact were made by the court, the judgment must be given the effect of a factual determination on the only controverted issues in the case, and, as such, is conclusive on this court. Further, as we have indicated, it is difficult to conceive how any other decision properly could have been reached by the trial court.

The validity of the tax sale certificates involved is not challenged. The board of county commissioners had the power and right to determine the amount for which the certificates might be sold and the treasurer had the authority thereafter to assign them. '35 C. S. A., c. 142, §§247, 249. Neither is the sufficiency or regularity of the resolution fixing the price and authorizing the assignment questioned. No bulk sale or preference to a purchaser is established.

Under these circumstances the plaintiff, as assignee of the county, became vested with the same rights under the certificates as though it had been the original purchaser at the tax sale, and, therefore, upon the redemption of the property was entitled to the full amount paid for the redemption thereof. *Buchanan v. Griswold,* 37 Colo. 18, 86 Pac. 1041.

The judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE HOLLAND dissent.

MR. JUSTICE HOLLAND, dissenting.

The majority opinion herein is another bridge across the gap between insufficient legislation and public interest, and over which profiteers may safely travel. Public interest is involved in this case, and to sanction the trans-

action herein questioned is to approve that which is against public policy.

The court, not the legislature, has said that bulk sales of tax certificates held by a county, or the preference of a purchaser thereof, is prohibited. This bespeaks the spirit of the law that is not so lettered. But there is a way around this supposed barrier, and the present case affords the formula. Being first mindful of the surrounding facts, ask the question: What was the true intention of the parties to this deal? There can be but one answer: It clearly was intended, and so agreed, that a discount on a given number of certificates satisfactory to the company be fixed upon its offer, so that it might become the purchaser. The resolution of the board followed immediately, which itemized the discount on the bulk of the certificates and calculation fixed the price. For whom? Did the party need to be named? I know and the reader knows. It could have been the messenger entrusted with the delivery of the commissioner's resolution to the treasurer, with the resolution in one hand and its money in the other. Was the stage set? Unquestionably so, and the actor furnished at the public's expense. The door should not be so opened for clandestine colluders. I contend that there is more iniquity concealed in this, now approved, method, than there possibly could be in an open act of the commissioners, not unduly influenced, in saying it is for the best interest of the county that a certain number of certificates may be sold to John Jones for a named price. The public then would be advised, and if irregularities were present, they could be isolated and corrected. In either event, the purchaser should have no greater rights than one who purchases at the original regular tax sale, and whose only right is a deed if the property is not redeemed in due course. An original purchaser pays the full amount due the county, and the public has no cause for complaint. In this case, however, the unnamed preferred purchaser is given a two-fold opportunity; that is, either to profit at the expense of the county and other tax-

payers, or receive a deed to the property. It is not without the realm of possibility for faithless commissioners, in proceedings of the character here involved, to give preference to a friend or an obligee.

Let it be understood that I do not in any way question the integrity of the commissioners or the agent of defendant in error, in the transaction here involved; I believe both acted in accordance with what may be the customary method of attempting to stay within the letter of the law and decisions of this court, and that they did so in good faith, but I condemn the custom, if it may be said to be a custom.

I think the judgment should have been reversed in part, to the end that defendant in error be permitted to recover only the amount it paid for the certificates with allowable interest. The court's failure in this respect has elicited this my expressed disapproval of its action in affirming the judgment.

MR. JUSTICE HILLIARD, also dissenting.

I think it clearly appears that at the conclusion of the negotiations between the parties, one of the terms agreed upon was that in the event the owners of the property redeemed from the tax sales, then the purchaser of the certificates should only enjoy the return of its investment and interest. I concur in the concluding paragraph of Mr. Justice Holland's dissent.