**BOARD OF COMMISSIONERS OF
PITKIN COUNTY, Colorado,
Petitioners**

v.

**Grant Curtis TIMROTH, Respondents.**

No. 02SC704.

Supreme Court of Colorado,
En Banc.

March 8, 2004.

Rehearing Denied April 5, 2004.

John M. Ely, Pitkin County Attorney, Aspen, Colorado, Attorney for Petitioner.

Montgomery Little & McGrew, P.C., Frederick B. Skillern, Greenwood Village, Colorado, Wright & Adger, LLP, Gary Wright, Aspen, Colorado, Attorneys for Respondent.

Kaplan Kirsch Rockwell, Lori Potter, Denver, Colorado, Attorney for Amicus Curiae Aspen Valley Land Trust, The Wilderness Society, Aspen Wilderness Workshop, and Wilderness Watch in Support of Pitkin County Board of County Commissioners.

Justice RICE delivered the Opinion of the Court.

The Pitkin County Board of County Commissioners ("the County") seeks review of the court of appeals decision in *Timroth v. Oken*, 62 P.3d 1042 (Colo.App.2002). The court of appeals reversed the district court's grant of summary judgment in favor of the County in a suit filed by respondent Grant Curtis Timroth ("Timroth"). Timroth had filed a complaint in Pitkin County District Court seeking to quiet title to a mining claim pursuant to C.R.C.P. 105 ("Rule 105").[1] The County asserted ownership of the claim based on a treasurer's deed[2] issued in 1964 for a tax sale held in 1908. On cross-motions for summary judgment, the district court quieted title in favor of the County, finding that extrinsic evidence demonstrated the validity of both the 1908 sale and the 1964 deed.

The court of appeals reversed the district court, holding that the 1964 deed was void on its face. It further held that while extrinsic evidence was admissible to prove the validity of the underlying tax sale, and indeed did so in this case, it was not admissible to rehabilitate a treasurer's deed that was void on its face. The court of appeals noted that the county was therefore entitled to the issuance of a new, valid, treasurer's deed. However, the County's entitlement to a new deed would be subject to the right of redemption by any party entitled to redeem, and the court of appeals found that disputed issues of fact remained regarding Timroth's right to redeem the property.

We granted certiorari on the issue of "[w]hether the court of appeals erred by refusing to admit extrinsic evidence under [Rule] 105 tending to support the validity of a treasurer's deed otherwise void on its face." We now reverse. We hold that Rule 105 requires courts to adjudicate all claims regarding real property in one action, and the issues and evidence before the trial court adequately presented a claim for reformation of the 1964 treasurer's deed. We further hold that under the facts of this case, the County was entitled to reformation of its treasurer's deed. The reformed deed relates back to the 1964 deed, and Timroth's claim of adverse possession therefore fails because one cannot adversely possess against the sovereign.

## I. Facts and Procedural History

In 1892, the United States granted a patent in fee simple to Henry Powers and Powell Smith for the Twilight Lode Mining Claim, the property that is the subject of this dispute. Taxes were assessed in Pitkin County, and in 1908 a property tax sale was held for unpaid 1907 taxes. There were apparently no bidders at the sale. The property was therefore struck to Pitkin County and a tax certificate was issued to the County. In 1964, a treasurer's deed was issued to the County based upon the 1908 tax sale and certificate, and this deed was duly recorded.

In his complaint, Timroth alleged ownership on three grounds: a deed properly recorded in the chain of title, adverse possession pursuant to sections 38–41–101 to –103, 10 C.R.S. (2003), and possession and payment of taxes pursuant to section 38–41–108, 10 C.R.S. (2003). Timroth's complaint also alleged that the County's title claim failed because the treasurer's deed upon which it relied was void. Timroth further contended that the tax sale-and resulting tax certificate-underlying the County's treasurer's deed were void. In his motion for partial summary judgment, Timroth based these asser-

---

**1.** Although Timroth's original claim asserted numerous grounds for quieting title, the only claim of title remaining on this appeal is one of adverse possession.

**2.** A treasurer's deed is often referred to as a tax deed or tax title. The terms are therefore used interchangeably.

tions on the fact that the recitals in the deed indicate that the property was struck to the County on December 12, 1908. The statute governing the tax sale required the sale to be commenced on or before the second Monday in November. § 5714, R.S. 1908 (now codified with amendments at § 39–11–109, 11 C.R.S. (2003)). A statutory exception allowed for commencing the sale later:

> If, from any cause, real property can not be duly advertised and offered for sale on or before the second Monday of November, it shall be the duty of the treasurer to make the sale on any subsequent day in which it can be made, allowing time for the publication of notice, as provided in this act.

§ 5715, R.S.1908 (now codified with amendments at § 39–11–110, 11 C.R.S. (2003)). However, neither the tax certificate nor the treasurer's deed recited any cause for the sale's delay. Moreover, the deed did not indicate when the sale commenced, and by statute property could not be struck to the County on the first day it was offered at a tax sale. § 5713, R.S.1908 (now codified with amendments at § 39–11–108, 11 C.R.S. (2003)).

In its cross motion for summary judgment, the County attacked Timroth's claims of record ownership of the property and payment of taxes. Timroth's deed was a special warranty deed received from Tyrone Austin Thompson in 1988. Thompson had received his interest from John Francis Powers III in 1979 by quitclaim deed. The County maintained this was a wild deed, as no recorded conveyance indicates how John Francis Powers III received his interest in the property. The County also asserted that neither Timroth nor his predecessors in title ever paid any property taxes.[3] With respect to Timroth's adverse possession claim, the County noted that a claim of adverse possession cannot lie against the sovereign.

The district court dismissed Timroth's complaint. The court admitted extrinsic evidence offered by the County explaining the delay in the tax sale. The district court therefore held that the resulting tax deed was rehabilitated and thus valid. With respect to Timroth's claims of superior title, the court noted that the County had responded to Timroth's complaint by refuting his claims of ownership, and supported its contentions with affidavits and other evidence. Because Timroth, in his reply to the County's summary judgment motion, did not attempt to counter this evidence, the court held that Timroth held no claim to the property.

The court of appeals reversed the trial court. The court of appeals held that extrinsic evidence was admissible to show the validity of the tax sale, but it was not admissible to rehabilitate a treasurer's deed that was void on its face. Thus, the court noted that the County was still entitled to the issuance of a valid treasurer's deed. However, the right to a corrected treasurer's deed remained subject to the right of redemption of anyone who was entitled to redeem the property. The court of appeals upheld the district court's determination that Timroth's claim of title based on his deed issued from Tyrone Austin Thompson failed because Timroth had provided no evidence to counter the County's assertion that the deed was not in the recorded chain of title. The court of appeals also upheld the trial court's determination that Timroth could not claim ownership based on payment of taxes, again because Timroth had not refuted the County's contention that no taxes had been paid or offered by Timroth or any of his predecessors in interest.

With respect to Timroth's claim of adverse possession, however, the court of appeals held that the County had not actually refuted Timroth's assertion. The County had merely declared that adverse possession cannot lie against the sovereign. Because the court of appeals had already determined that the County only possessed the right to a valid treasurer's deed and did not have preexisting legal title to the property, the court of appeals held that Timroth's adverse possession claim had not been defeated, and material questions of fact remained on that issue.

---

**3.** James Blanning attempted to pay taxes in 1988 but the County refused this offer. No title or other evidence in the record indicates any connection between Blanning and Timroth.

## II. Analysis

### A. Rule 105 Requires a Complete Adjudication of Rights

Rule 105 provides for a "complete adjudication of the rights of all parties" in any action brought "with respect to any real property.... The court in its decree shall grant full and adequate relief so as to completely determine the controversy and enforce the rights of the parties." Prior to the enactment of Rule 105, the form of the complaint determined the nature of the suit. *See Vogt v. Hansen,* 123 Colo. 105, 111–12, 225 P.2d 1040, 1043 (1950) (noting that the rules of the old code "making specific provision for different forms of real-property action had been supplanted by Rule 105(a)"); *cf. Miller v. Stoner,* 107 Colo. 317, 319, 111 P.2d 903, 904 (1941) (declaring in a pre-Rule 105 case that the "complaint states a good cause of action to remove a cloud [and][d]efendants could not convert it into a suit to quiet title").

■ After the enactment of Rule 105, only one form of property action remained, and "[i]t is not form but substance which determines the nature of the action." *Levy v. Welsh,* 44 Colo.App. 360, 612 P.2d 1135, 1137 (1978), *aff'd,* 200 Colo. 36, 612 P.2d 80 (1980). Thus, even though the pleadings do not raise a particular issue, if the evidence before the court makes the issue apparent, the court must reach that issue in order to grant full and appropriate relief. *Keith v. Kinney,* 961 P.2d 516, 519 (Colo.App.1997); *see also Stubbs v. Standard Life Ass'n,* 125 Colo. 278, 280–81, 242 P.2d 819, 820 (1952) (declaring that "while the decree in form follows the old terminology of quieting title" the action set out the basis of a reformation claim and thus complied sufficiently with Rule 105); *Hodge v. Terrill,* 123 Colo. 196, 202–03, 228 P.2d 984, 987 (1951) (noting that adverse possession was not pled but evidence before the court raised the issue, and "it became the court's duty to determine the issue thus pre-

sented as if it had been raised by the pleadings").

■ In the case at hand, Timroth filed a complaint to quiet title in him and against the County. While the County did not file a counterclaim, its motion for summary judgment clearly placed the issue of reformation of its treasurer's deed before the trial court by essentially claiming that even if the treasurer's deed was void, it should be reformed. The County argued that the tax sale was lawfully conducted and that extrinsic evidence demonstrated this fact. The County further argued that this evidence therefore proved that the treasurer's deed resulting from this tax sale was not void. While these arguments did not explicitly state a claim for reformation, speaking instead of the validity of the deeds, the County adequately stated a claim for reformation. *See Hodge,* 123 Colo. at 202–03, 228 P.2d at 987; *Keith,* 961 P.2d at 519.

Neither the trial court nor the court of appeals addressed this issue directly. We recognize that both the trial court and the court of appeals implicitly considered the issue of reformation by addressing the admissibility of extrinsic evidence to rehabilitate the County's treasurer's deed.[4] However, neither court discussed or analyzed any precedent regarding reformation of treasurer's deeds. We do so here.

### B. Reformation of the County's Treasurer's Deed

#### 1. Case Law

■ Reformation of an instrument is an equitable remedy. *See, e.g., Jackson Enters., Inc. v. Maguire,* 144 Colo. 164, 167–68, 355 P.2d 540, 542 (1960). "Generally, equity will not entertain a suit to reform a tax deed." 72 Am.Jur.2d *State and Local Taxation* § 889 (2001). The rationale behind this rule

---

4. When a court considers the use of extrinsic evidence to rehabilitate an otherwise void deed, that court is essentially considering whether the deed should be reformed to reflect what it was allegedly intended to recite. An action to reform a deed to include the allegedly correct recitations necessarily requires the admission of extrinsic evidence, because extrinsic evidence provides the

means to demonstrate that the recitations contained in the original deed were somehow incorrect or incomplete. Thus, the real issue before us is not whether the court of appeals should have admitted extrinsic evidence, but rather whether treasurer's deeds may be reformed, and if so whether the County was entitled to have its deed reformed based on the evidence presented.

is that tax sale proceedings are purely statutory and operate entirely against the interests of the original landowner, thus in order to be valid a treasurer's deed depends upon strict compliance with the requirements of the statute under which it was issued. 85 C.J.S. *Taxation* § 1437 (2001); *see also Crisman v. Johnson,* 23 Colo. 264, 267, 47 P. 296, 297–98 (1896). However, the authorities cited in these legal encyclopedias for the rule against reformation of treasurer's deeds are over sixty years old and from other jurisdictions. Furthermore, the rule has not been followed consistently in numerous jurisdictions in a wide variety of circumstances. *See, e.g., Crompton v. Kirkland,* 157 Fla. 89, 24 So.2d 902 (1946) (reformation of tax deed with incorrect property description); *Resweber v. Jacob,* 125 So.2d 241 (La.App.1960) (reformation of tax deed with incorrect recitation of the year of the delinquent taxes); *Perkins v. Masek,* 366 P.2d 101, 106 (Okla. 1961) (reformation of tax deed where the property description in a tax deed was indefinite and void). Moreover, Colorado courts have not directly addressed the issue, and even those cases which bear indirectly on the subject do not provide clear guidance.

The court of appeals examined our precedent and determined that extrinsic evidence could only be considered for the purposes of demonstrating the validity of the underlying tax sale and not for the purposes of demonstrating the validity of the treasurer's deed. The court cited to *Ireland v. Gunnison Mountain Coal & Coke Co.,* 87 Colo. 193, 286 P. 280 (1930), *Kingore v. Wallace,* 85 Colo. 381, 276 P. 332 (1929), and *Miller v. Stoner,* 107 Colo. 317, 111 P.2d 903 (1941), in support of this conclusion. We find none of these cases controlling.

In *Ireland,* the purchaser of the treasurer's deeds conceded that his deeds were voidable because the tax sale was held in violation of the statute, and the sole issue before the court was how much he should recover from the original owner who sought to redeem the properties. 87 Colo. at 195, 286 P. at 281. In *Kingore,* the tax sale was held

late with no explanation, thus invalidating the tax sale. 85 Colo. at 383, 276 P. at 332. Thus, in *Ireland* and *Kingore,* the underlying tax sales were void. Because a valid tax sale is a necessary precondition to a valid treasurer's deed, the *Ireland* and *Kingore* courts never reached the issue we consider today.

In *Miller* the court stated that "we have before us the sole question of the sufficiency of the complaint" on the plaintiff's appeal of the trial court's demurrer in favor of the defendant. 107 Colo. at 319, 111 P.2d at 904. Thus, the court was considering the very narrow issue of whether the demurrer should be overruled. The *Miller* court declared that the defendant's treasurer's deeds were invalid, presumably because the date of the tax sale indicated on the deed did not comply with the statute, even though the defendant's deeds were accompanied by an affidavit explaining the late sale.[5] However, the court did not explain its reasoning: "Analysis and authority are unnecessary to show that such deeds were prima facie invalid." *Id.* Thus we are left to speculate as to how and why the court reached its conclusion.

A number of our cases imply that extrinsic evidence might be admissible to rehabilitate a treasurer's deed. *See, e.g., City & County of Denver v. Murry,* 82 Colo. 128, 129, 257 P. 359, 359 (1927) (stating that the tax deed shows no cause for the delay of the sale, "nor does the record contain any evidence of cause"); *Hamer v. Glenn Inv. Co.,* 75 Colo. 423, 424, 226 P. 299, 299 (1924) (noting that "the deed recites no cause for the postponement, and we find no evidence of cause in the record"). The court of appeals considered these cases but determined that none of them held that such extrinsic evidence would be admissible to directly rehabilitate a treasurer's deed that was void on its face. Instead, the court of appeals interpreted them to allow only for the admission of extrinsic evidence to validate the underlying tax sale, thereby entitling the holder of the tax certificate to the issuance of a valid treasurer's deed. We do not agree with the court of appeals' interpretation. While these cases

---

5. If the explanatory recital showing good cause for the late sale had been included on the face of the deed, the deed would not have been void.

See *City & County of Denver v. Bach,* 92 Colo. 594, 600, 22 P.2d 1114, 1117 (1933).

do not explicitly sanction the use of extrinsic evidence to rehabilitate a void treasurer's deed, they do contemplate its admissibility under some circumstances.

Still other Colorado cases prohibit the admission of extrinsic evidence to rehabilitate a treasurer's deed otherwise void on its face, but these cases do so because of the limitations of the issues pled. *See, e.g., Page v. Gillett,* 47 Colo. 289, 107 P. 290 (1910). For example, in *Page,* we stated:

The deeds themselves being void, . . . outside testimony was not competent to bolster them up. Testimony showing or tending to show that the several parcels of land included in the deed were in fact offered and sold separately . . . was properly excluded. This proof might tend to establish valid sales. It would not mend void deeds. It might be one step in proof that defendant was entitled to good deeds, when he got bad ones, but there is no such issue. *This is not suit to reform the conveyances. . . . The defendant . . . must be limited in proof to the issue tendered.*

*Id.* at 294, 107 P. at 292 (emphasis added); *see also Newsom v. Jacobs,* 51 Colo. 579, 582, 119 P. 623, 624 (1911) (Because the defendant claimed to have a valid treasurer's deed, he could not then introduce evidence showing that the deed, which was void on its face, was actually valid; "he must be limited in proof to the issues tendered."); *Emerson v. Valdez,* 24 Colo.App. 458, 135 P. 137, 138 (1913) (noting that "[i]t is apparent that in the instant case the pleadings in no way indicate or suggest an action to reform a conveyance . . . although in a suit to reform such tax deeds . . . [the evidence] might have been admitted . . . to authorize a court of equity to decree the reformation"). The court of appeals never addressed this particular facet of these cases, instead determining that *Page, Emerson,* and *Newsom* stood only for the proposition that extrinsic evidence would be admissible to show a valid tax sale.

Thus, our precedent does not provide a clear answer to the issue of whether a treasurer's deed otherwise void on its face might be subject to reformation under limited circumstances. In the absence of such clear authority, we consider case law from other jurisdictions, where we find many instances where invalid treasurer's deeds were reformed or otherwise rehabilitated. *See, e.g., Brannan v. Henry,* 142 Ala. 698, 39 So. 92 (1905) (parol evidence admitted to aid in ambiguous description of land in the treasurer's deed); *Crompton v. Kirkland,* 157 Fla. 89, 24 So.2d 902 (1946) (court will allow equity to reform a treasurer's deed with an erroneous description of the property); *Carousel v. Higgins,* 169 Ill.App.3d 180, 119 Ill.Dec. 861, 523 N.E.2d 617, 619–20 (1988) (incorrect description of property on the treasurer's deed is "little more than a scrivener's error" and "[t]he court has jurisdiction to correct an obvious clerical error"); *Willson v. Davis,* 832 So.2d 360, 364 (La.App.2002) (court allows for reformation of tax deeds just as any other deed; the need for stability in such transfers makes the non-consensual nature of the conveyance irrelevant); *Buk Lhu v. Dignoti,* 431 Mass. 292, 727 N.E.2d 73, 76 (2000) (reformation of a tax deed allowed to correct a mutual mistake); *Kneeland v. Hull,* 116 Mich. 55, 74 N.W. 300, 300 (1898) (while recognizing the general rule that the statute must be adhered to strictly, the court nevertheless determined that equity required a different result where the deed misdescribed the property sold); *Albritton v. Fairley,* 116 Miss. 705, 77 So. 651 (1918) (extrinsic evidence admitted to cure an ambiguous property description); *Riggle v. Skill,* 9 N.J.Super. 372, 74 A.2d 424 (Ch. Div.1950) (reformation of a treasurer's deed allowed where the deed erroneously included plaintiff's property); *Perkins v. Masek,* 366 P.2d 101, 106 (Okla. 1961) (where the property description in a tax deed was indefinite and void, a court "has the power to reform a tax deed under the proper circumstances").

■ We find this case law from other jurisdictions persuasive. Because reformation is an equitable remedy, and equity exists "to promote and achieve justice with some degree of flexibility," *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 855 (Colo. 1992), we hold that a treasurer's deed otherwise void on its face may be reformed—through the use of extrinsic evidence—under limited circumstances. We now turn to the particular facts of this case.

### 2. Application

Timroth seeks to claim ownership based, essentially, on a technical error in the preparation of the County's deed. As determined by the court of appeals, the tax sale was lawfully conducted, and that issue is not before us on this appeal. Furthermore, Timroth does not assert that the County's deed was not properly recorded so as to fail to provide record notice. Rather, his argument is more tortured. Because one cannot adversely possess against the sovereign, § 38–41–101(2), 10 C.R.S. (2003), Timroth's claim of ownership is based entirely on the fact that the County's deed is invalid because of the technical error of failing to recite the cause for the delay of the tax sale. Thus, he asserts that the County is not the current owner but is instead only entitled to a corrected deed. This entitlement to a corrected deed would be subject to anyone entitled to redeem the property, including an adverse possessor. See Notch Mountain Corp. v. Elliott, 898 P.2d 550, 555 n. 6 (Colo.1995) (noting that an adverse possessor may redeem). We are not prepared to reward a claim such as this.[6]

In essence, Timroth is attempting to claim adverse possession against a non-existent owner. When the County received and recorded its deed in 1964, such recordation provided constructive notice to the original owners and their assigns that any claim to ownership or redemption of the property had been extinguished. Thus, Timroth's claim of adverse possession stands against owners who believed that any interest they may have once had in the property had been lost.

■ Here, the County has adequately stated a claim for reformation of its treasurer's deed. The tax sale was lawfully conducted, the deed was duly recorded providing constructive notice to all, and the error complained of in the deed is little more than a scrivener's error. We therefore hold that the County is entitled to reformation of its 1964 deed to reflect the cause for delay in the tax sale. Such a holding is consistent with the general trend toward affirming tax titles as we have expressed in Smith v. Griffin, 14 Colo. 429, 23 P. 905 (1890), Waddingham v. Dickson, 17 Colo. 223, 29 P. 177 (1892), and Colpitts v. Fastenau, 117 Colo. 594, 192 P.2d 524 (1948). See generally, § 38–34–101, 10 C.R.S.2003 ("[I]t is ... the policy of this state that [all laws affecting title to real property] be liberally construed with the end in view of rendering such titles absolute ... and not defeated by technical or strict constructions.").

In Smith we stated that "where a mere clerical mistake has occurred in preparing the [treasurer's] deed, the purchaser has a right to have it corrected." 14 Colo. at 432, 23 P. at 906. The Smith court admitted extrinsic evidence showing that the description in the treasurer's deed, which differed from the description given when the land was originally subdivided, referred to the same tract of land. Id. In response to a challenge to the deed's validity, the court noted the description used would not have misled the original owner, and the incorrect description "should not be held so defective as to vitiate the sale." Id.

Two years later, we rejected a challenge to the validity of a treasurer's deed based on purely technical defects. Waddingham, 17 Colo. at 230–31, 29 P. at 180 (noting that the objections made "are purely technical, and cannot be allowed to prevail for the purposes of overthrowing a proceeding that in all substantial particulars appears to have been fair and regular"). The Waddingham court went on to explain that there was a trend toward affirming the validity of tax titles, and property owners who failed to pay their taxes could not rely upon mere technical errors by the public officers entrusted with the responsibility to collect taxes. Id. Some fifty years later, we reaffirmed this general trend toward affirming the validity of tax sales and the resulting tax titles. Colpitts, 117 Colo. at 597, 192 P.2d at 527.

Under the circumstances of this case, where the tax sale was lawfully conducted, the deed was duly recorded, and the deed

---

6. Timroth also argues that the County never offered the property up for sale as required by section 39–11–142(5), 11 C.R.S. (2003), and equi-

ty will not come to the aid of one who violates the law. Because this issue was not raised before the trial court, we do not consider it here.

contained only a technical defect, equity permits the reformation of the County's treasurer's deed based on the undisputed evidence presented to the trial court regarding the validity of the underlying tax sale.

### 3. Relation Back

The only remaining question is whether the reformed deed relates back to the original 1964 deed. We hold that it does. Generally, reformation of an instrument relates back to the original date of execution of the instrument. 76 C.J.S. *Reformation of Instruments* § 89 (2001). An exception is made where such reformation would injure "bona fide purchasers without notice and those standing in similar relations." *Id.* Because the County's deed was properly recorded, providing constructive notice to anyone claiming an interest in the property, Timroth cannot take shelter under this exception. The mere fact that the deed was not reformed until after the institution of Timroth's action against the County is of no consequence. *See, e.g., Foley v. Worthington,* 202 Okla. 23, 209 P.2d 871, 872 (1949) (noting that a corrected tax deed, issued to replace a defective deed, related back to the original deed even though the corrected deed was not issued until after the litigation commenced); *McCullough v. Young,* 198 Okla. 96, 175 P.2d 322, 324 (1946) (same).

### III. Conclusion

We hold that the County properly stated a claim for reformation of its treasurer's deed pursuant to Rule 105. We further hold that the County was entitled to reformation of this deed, and the deed as reformed relates back to the date of issuance of the original deed. We therefore reverse the court of appeals opinion and remand the case to the court of appeals for reinstatement of the district court order granting summary judgment and quieting title in the County.