**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

COLIN CHAPMAN,

      Plaintiff/Counterclaim-
      Defendant/Appellant,

v.

ASHEL A. DENMAN; GEORGE
MCCULLOUGH; M. S.
MCCULLOUGH, and any and all
unknown persons who claim any
interest in the subject matter of this
action,

      Defendants/Crossclaim-
      Defendants,

and

UNITED STATES OF AMERICA,

      Defendant/Crossclaim-Plaintiff/
      Counterclaim-Plaintiff/
      Appellee,

and

SECRETARY OF AGRICULTURE;
UNITED STATES FOREST
SERVICE,

      Defendants-Appellees.

No. 04-1331
(D.C. No. 00-MW-2358-(OES))
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

Plaintiff and counterclaim defendant, Colin Chapman, appeals from an order of a United Magistrate Judge[1] granting summary judgment in favor of defendants the United States of America, the Secretary of Agriculture, and the United States Forest Service on his claims for record title and adverse possession, and in favor of the United States on its counterclaim for record title. We affirm.

### Background

The property at issue in this case is an approximate ten-acre patented mining claim known as the Puzzler Lode Mining Claim (Puzzler). It is located in the Maroon Bells-Snowmass Wilderness Area of the White River National Forest, about ten miles south of Aspen, in Pitkin County, Colorado.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] The parties consented to the exercise of jurisdiction by a magistrate judge.

The undisputed, material facts concerning the Puzzler began more than one hundred years ago with a location certificate recorded in 1881, and the issuance of a patent in 1893. When the owners failed to pay the property taxes, the Pitkin County Treasurer offered the Puzzler at a tax sale on December 16, 1901. Because there were no bidders, the Puzzler was struck off to Pitkin County through a treasurer's certificate of purchase.

In May 1954, the Pitkin County Treasurer issued a Notice of Purchase of Real Estate at Tax Sale and of Application for Issuance of Treasurer's Deed for the Puzzler. A treasurer's deed for the Puzzler was issued to the Pitkin County Board of County Commissioners (BOCC), and recorded on June 16, 1954.[2]

In July 1976, Pitkin County passed and recorded a resolution concerning numerous mining claims that it had obtained by treasurer's deeds, including the Puzzler. The resolution recognized that the claims were located within the White River National Forest and stated that they were "useful and necessary for present public open space and parks and recreation." Aplt. App. at 288. And in July 1988, based on numerous "wild deeds"[3] being filed on county-owned mining

---

[2] Pitkin County continued to own the Puzzler until 1994 when it was conveyed to the United States. From 1954 through 1994, no property taxes were assessed because county-owned property is tax exempt. Colo. Rev. Stat. § 39-3-105.

[3] A "wild deed" is defined as "[a] recorded deed that is not in the chain of title . . . ." *Black's Law Dictionary* 446 (8th ed. 2004).

claims, the County recorded a Public Notice in the records asserting its ownership of numerous properties, including the Puzzler.

Plaintiff's chain of title began in July 1979, when a "wild deed" was recorded purporting to convey the Puzzler and several other mining claims from The Denver & Colorado Investment Company to the Aspen-Western Corporation. Shortly after recording the "wild deed," the Aspen-Western Corporation purported to convey the Puzzler to Stefan, Margaret and Everett Albouy (Albouys), who recorded the deed in October 1979. On July 14, 1991, the Albouys conveyed the Puzzler by quit claim deed to plaintiff, who paid nothing for it and who agreed to hold the Puzzler for the Albouys. Five days after receiving the quit claim deed from the Albouys, plaintiff filed a quiet title lawsuit in Pitkin County District Court concerning the Puzzler, and named the BOCC as a defendant.

In May 1994, Congress enacted the Exchange Act, Public Law No. 103-255, 108 Stat. 684 (1994), pursuant to which Pitkin County agreed to exchange certain lands, including the Puzzler, for a 230-acre parcel owned by the United States. As part of the exchange, the County conveyed the Puzzler to the United States by a quit claim deed, which was recorded on August 17, 1994. The Puzzler then became part of the White River National Forest. In December 1994, plaintiff and the BOCC filed a stipulated motion to dismiss the state court quiet title action without prejudice. Plaintiff filed his federal court quiet title action against the United States in November 2000.

In October 2002, the Pitkin County Treasurer issued a correction deed to correct the 1954 treasurer's deed, which failed to reflect the date the 1901 tax sale was commenced, and which also failed to contain a recital explaining why the tax sale was held late. Specifically, historical records were uncovered that established the date of sale as December 16, 1901, and the corrected deed stated that the sale commenced late because of "[l]ack of office help and time for the preparation and publication of the notice in the newspaper." Aplt. App. at 228. To cure any cloud on the title, the County executed another quit claim deed to the United States on January 22, 2003.

Standard of Review

The Quiet Title Act permits lawsuits against the federal government "to adjudicate a disputed title to real property in which the United States claims an interest . . . ." 28 U.S.C. § 2409a(a). Although the parties' respective claims arise under a federal statute, questions involving real property rights are determined by state law unless federal law requires a different result. *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378-81 (1977); *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986); *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1389 n. 4 (10th Cir. 1980).

We review the district court's grant of summary judgment de novo, viewing the evidence and drawing the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Gossett v. Okla. ex rel. Bd. of Regents for*

*Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1175. When applying Colorado law, the district court should ascertain and apply the state law to reach the result the Colorado Supreme Court would reach if faced with the same question. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). We also review the district court's application of state law de novo. *Id.*

Record Title

Under Colorado law, "a plaintiff in a quiet title action . . . bears the burden of establishing title in the property superior to that of the defendant . . . [and] the plaintiff must rely on the strength of his own title rather than on the weakness in or lack of title in [the] defendant[]." *Hutson Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986) (internal quotation omitted).

Plaintiff argues that the district court erred when it determined that the 1954 tax deed should be reformed to reflect the date of the sale as December 16, 1901, and that the reason for the untimely sale was the lack of sufficient personnel. His theory is that the treasurer's deed is void and that his chain of title, which begans with a "wild deed" in 1979, is superior to that of the United States. We disagree. In nearly identical factual circumstances, the Colorado Supreme Court held that extrinsic evidence may be used to reform technical defects in a treasurer's deed, and the reformed deed relates back to the original

deed. *Board of County Comm'rs v. Timroth*, 87 P.3d 102, 108-09 (Colo. 2004). The evidence submitted by the United States in support of reformation was never disputed by plaintiff. As such, the district court properly entered an order reforming the deed.

Here, the undisputed material facts establish that the United States, which can trace its chain of title back to the location certificate recorded in 1881, has superior record title to the Puzzler over plaintiff, whose chain of title begins in 1979 with the recording of a "wild deed."

Adverse Possession

Although the Quiet Title Act permits lawsuits against the federal government to adjudicate disputed title to real property in which the United States claims an interest, it contains the prohibition that "[n]othing in this section shall be construed to permit suits against the United States based upon adverse possession." 28 U.S.C. § 2409a(n). Plaintiff argues that the prohibition does not apply if he or his predecessors in interest, the Albouys, acquired title to the Puzzler by adverse possession before the United States first claimed an interest[4] in the property in 1994. The district court disagreed, and held that the clear and

---

[4]    Plaintiff argues alternatively that the prohibition does not apply until the United States obtains good title to the property. This is contrary to our prior cases interpreting the Quiet Title Act and the requirement that the United States need only claim an interest in the property to trigger the Act's limitation provision. *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980); *Stubbs v. United States*, 620 F.2d 775, 781 (10th Cir. 1980).

unambiguous language of the statute barred his claim for adverse possession, regardless of when the claim may have accrued.

Assuming for argument that a plaintiff may base a quiet title claim on a claim of adverse possession that has ripened into title prior to the United States claiming an interest in the property, there are no facts to support such a claim in this case. Admittedly, the district court did not reach this conclusion in its decision because it found that plaintiff's adverse possession claims were barred. Nonetheless, we may "affirm a grant of summary judgment on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (quotation marks and citation omitted).

Colo. Rev. Stat. § 38-41-101(1) provides for adverse possession where a plaintiff and/or his predecessors in interest have been in possession of property for more than eighteen years. The possession must be: (1) actual; (2) adverse; (3)hostile; (4) under claim of right; (5) exclusive; and (6) uninterrupted. *See generally Salazar v. Terry*, 911 P.2d 1086, 1089, n. 4 (Colo. 1996).

Plaintiff claims that his adverse possession of the Puzzler began in 1979, when the Albouys recorded their deed. Setting aside the fact that plaintiff has failed to prove adverse possession under Colorado law, by his own admission the

alleged adverse possession could not have ripened into title until 1997, which is three years after the United States first claimed an interest in the Puzzler.

Further, to avoid the consequences of Colo. Rev. Stat. § 38-41-101(2), which provides that a party cannot adversely possess against a county, plaintiff argues that Pitkin County never owned the Puzzler until 2004 when the district court entered its order reforming the treasurer's deed. To the contrary, the reformed deed was retroactive to 1954, and from that point forward the Puzzler was owned by the County, against whom no claim for adverse possession lies. *Timroth*, 87 P.3d at 108-09.

Likewise, plaintiff's claim of title to the Puzzler pursuant to Colorado's seven-year adverse possession statute also fails. Colo. Rev. Stat. §38-41-109 requires, among other things, the payment of all taxes legally assessed for seven successive years, under color of title made in good faith. Our consideration of this claim is resolved by the fact that there is nothing in the record that plaintiff ever paid any taxes on the Puzzler.

## Conclusion

Based on the foregoing undisputed material facts, the district court correctly found that the United States was entitled to summary judgment on plaintiff's claims for record title and adverse possession. The court also correctly

entered summary judgment in favor of the United States on its counterclaim for record title to the Puzzler. The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Circuit Judge